## Case No. 3,789.

### DENNETT v. MITCHELL.

[6 Law Rep. 16; 1 N. Y. Leg. Obs. 356.]

District Court, D. Maine. Feb., 1842.

BANKRUPTCY—PRIOR BONA FIDE CONVEYANCES.

A conveyance of property by a bankrupt, bona fide, made more than two months before he filed his petition, for a fair and adequate consideration, is not void, although he may have been insolvent at the time; provided the other party had no notice of a previous act of bankruptcy, or of his intention to take the benefit of the bankrupt law [of 1841 (5 Stat. 440)].

[Cited in Ashby v. Steere, Case No. 576.]

In bankruptcy. This was a petition of Gardner Dennett, assignee of David D. Ruggles, a bankrupt, claiming certain property, which had been transferred by Ruggles to G. & D. N. Ropes, which had been taken into possession by their assignee, as having been transferred in fraud of the bankrupt law, and for the purpose of giving them a preference over the creditors. The material facts were as follows: The Messrs. Ropes, being creditors of Ruggles and indorsers of his paper to a considerable amount, became dissatisfied with the state and prospects of his business, and called upon him on the 17th of June for security. Ruggles declined giving security, but offered to transfer, by an absolute bill of sale, any of his property to pay the debts due to them, and further to pay the amount of their liabilities for him, on condition of their assuming and undertaking to pay them as their own proper debts. This proposition was accepted, and he accordingly conveyed to them on that day, by an absolute bill of sale, all the stock in trade, in the store he then occupied, with other property of various kinds, including several promissory notes and other choses in action, to the amount of $2,703.06. The Ropeses at the same time surrendered to him his notes to them and other obligations to an equal amount. On the 20th, Ruggles made a further transfer to them to the amount of $870, and gave his note for $1,977.95, and received in payment and satisfaction other of his notes given up, and an obligation of the Ropeses to assume absolutely and pay his paper, on which they were indorsers, to the amount of $2,366.09, the whole consideration being $2,847.95. It is not denied that the consideration paid was the full value of the property. At that time the Ropeses were in good credit, and remained so until about the 25th of July, when, finding themselves insolvent, they filed their petition in bank-

ruptcy. After the sale and transfer, Ruggles continued to dispose of his property, collect his debts, and pay his creditors until the Ropeses failed, but made no new purchases. He does not appear to have considered himself insolvent until after their failure, or at least had not till that time contemplated going into bankruptcy. After that event, he discontinued business entirely, and on the 25th of August filed his petition to take the benefit of the bankrupt law.

Mr. Rand, for petitioner.

Mr. Preble, for respondent.

WARE, District Judge. The validity of the transfers by Ruggles on the 17th and 20th of June to the Messrs. Ropes is objected to as having been made in contemplation of bankruptcy and for the purpose of giving to them a preference and priority over the general creditors of the bankrupt. The second section of the act applies to the case. That provides: "That all future payments, securities, or transfers of property, or agreements made or given by any bankrupt, in contemplation of bankruptcy, and for the purpose of giving any creditor, indorser, surety or other person any preference or priority over the general creditors of such bankrupts, * * * shall be deemed utterly void and a fraud upon this act, and the assignee under the bankruptcy shall be entitled to claim, sue for, recover, and receive the same as part of the assets of the bankruptcy." All payments or transfers of property, which fall within the provisions of this clause, are absolutely null and void, and convey either no right or title, or at least no title valid against the assignee of the bankrupt. But in order to bring the payment or transfer within the statute, it must have two qualities: First, it must be made in contemplation of bankruptcy; and, secondly, it must be for the purpose of giving to the creditor, to whom the payment or transfer is made, a preference or priority over the general creditors of the bankrupt. The legal validity of the payment or transfer is made to depend on the state of the bankrupt's mind, and his purpose and intentions in making it.

In the first place, then, to render the transfer void it must be made in contemplation of bankruptcy. The precise import and force of these terms were one of the questions which arose in the case of Arnold v. Maynard [Case No. 561], and it was decided that the phrase did not necessarily imply an intention on the part of the debtor to take the benefit of the bankrupt law, or to commit an act of bankruptcy, which would render him subject to be proceeded against as a bankrupt by his creditors. But the act comes within the prohibition of the law when done in contemplation of a state of insolvency or of "bankruptcy," in the popular sense of the word: that is, when it is done with the knowledge and belief of his inability to pay

the whole of his debts and continue his business. The question is, then, whether the transfer and sale to the Messrs. Ropes was made "in contemplation of bankruptcy" in this popular sense of the words. For if it was done with the knowledge and belief that he was unable to pay all his creditors, the law will presume the intention on his part of preferring and giving priority to the creditor thus paid. The deposition of the bankrupt has been taken by the petitioner, who seeks to set aside the conveyance, and all objections to its admissibility are waived on the other side. He states distinctly that he did not make the payment and conveyance to the Ropeses in contemplation of bankruptcy, and with an intention of taking the benefit of the law; that he had never thought of that until after the failure of the Ropeses; that when he made the conveyance to them he thought he should be able to pay the whole of his debts if his creditors gave him the same indulgence that they had been accustomed to give, but that he had since ascertained that he could not; that after the conveyance he continued to collect what was due him, turn his property into money, and pay his own debts, until the failure of the Ropeses; and that it was his intention, at the time he made the transfer, to continue his business so far as was necessary to convert his property into cash for the purpose of paying his debts, but no further.

I do not understand that the good faith of the bankrupt, in what he states as to his intentions and expectations, when he made the sale and transfer to the Ropeses, is called in question. But, however confident his expectations of being able ultimately to pay the whole of his debts may have been, it is quite certain that he was then deeply insolvent. From the exhibition he has since made of his debts and assets, it appears that his own proper debts, independent of his liabilities as indorser for the Ropeses, amounted to about fifty per cent. more than the whole nominal amount of his assets, including all debts due him. It would be a liberal estimate of his property to put it effectively at one half of his own debts. The payment and transfer to the Ropeses then, in point of fact, whatever may have been the intention of the bankrupt, operated to give them a preference over his other creditors. It is contended by counsel that the bankrupt ought not to be heard to say that he believed himself able to pay the whole of his debts, when by his own showing, his own proper debts amounted to upwards of $9,000, exclusive of his liabilities as indorser, while the whole nominal amount of his property, according to his own valuation, made a short time after, was but about $6,000; that, if he was a person of ordinary prudence and discretion in the management of his affairs, the natural presumption that he knew his insolvency ought to prevail, as a presumption of law against his own declaration to the contrary, not on the ground of a wilful violation of truth on his part, but on the ground of the general policy of the law. This view of the matter would certainly deserve great consideration if the question was simply one between the different creditors.

But the decision of this question does not affect the creditors alone; it reaches the bankrupt also. For the statute not only declares such preferential payments and transfers void, but it adds "that the person making such unlawful preferences and payments shall receive no discharge under the provisions of this act." Now if the bankrupt honestly believed, when he made the transfer or payment, that he was able to pay all his debts, it would be a harsh construction of the law to hold that it intended to deprive him of his discharge, although in the result it might appear that he acted under a delusion; and I do not see how the court can hold the transfer or payment fraudulent in one respect and not in the other,—that it shall be deemed fraudulent to render the transfer void, and not fraudulent to bar the bankrupt of his discharge. It appears to me, therefore, that there is a serious difficulty in holding the payment and transfer void on any grounds of general policy, if it be admitted that it was made by the bankrupt, under a belief, fairly entertained at the time, that he was able to pay the whole of his debts. But in this case the payments and transfers to the Ropeses were made on the 17th and 20th of June. Ruggles filed his petition to be declared a bankrupt on the 25th of August, more than two months after the payments were made. The transaction, therefore, falls within the proviso of this section of the law: "That all dealings by and with any bankrupt, bona fide made and entered into more than two months before the petition filed against him or by him, shall not be invalidated or affected by this act, provided, that the other party to any such dealings or transactions had no notice of a prior act of bankruptcy, or of the intention of the bankrupt to take the benefit of this act." If the sale and transfer was made in good faith, and the Ropeses had no notice of Ruggles' intention to take the benefit of the act, then it is not rendered void. Now, what is necessary to give to the act the character of good faith within the proviso? Is anything more required than that it should be actually done more than two months before the filing of the petition, and that it should be for a fair and adequate consideration, without notice on the part of the purchaser of any prior act of bankruptcy, or of an intention on the part of the bankrupt to take the benefit of the act? The fact that the vendor was insolvent at the time, and that he knew himself to be so, would not, it seems, deprive the transaction of its character of good faith, so as to render the act void. For if that would invalidate the act,

no distinction would exist between dealings and transactions more than two months before the bankruptcy and those less. The distinction between preferential payments and transfers made more than two months before the bankruptcy and those made within that time is, that in the latter case a payment or transfer is deemed fraudulent and void when made in contemplation of bankruptcy and for the purpose of giving the creditor a preference, without notice on his part, and in the former it is not so deemed, unless the other party has notice of a previous act of bankruptcy, or of the intention of the bankrupt to take the benefit of the act. If, indeed, the bankrupt at the time knew himself to be deeply insolvent, and the fact of his insolvency was known to the other party, but without the knowledge of any intention on his part to take the benefit of the act, and then the bankrupt should present his petition some three or four months afterwards, it might present a case deserving consideration. But whether the transaction in such a case would be sustained under the law need not be decided in this case, for from the whole evidence on the record it is apparent that the bankrupt did not at the time of the sale consider himself insolvent, nor did he suppose himself so until after the failure of the Ropeses. Then finding that the debts which they had assumed, and for the payment of which he had furnished the means, would come back upon him, he became satisfied of his insolvency, and on a more careful examination of the state of his affairs he became satisfied that he was actually insolvent at the time of the settlement and transfer. My opinion, on the whole, is that the transaction was valid, and that the property must be retained by the assignee of the Ropeses, and be administered as part of their estate.