WINSOR (BURNHAM v.). See Case No. 2,180

WINSOR (DELANO v.). See Case No. 3,754.

WINSOR (JILLSON v.). See Case No. 7,321.

## Case No. 17,886.

### WINSOR v. KENDALL.

[3 Story, 507.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1844.

PREFERENCE BY BANKRUPT—"CONTEMPLATION OF BANKRUPTCY"—KNOWLEDGE OF CREDITOR.

1. Where the petition set forth that K, as agent of B, paid to A, a creditor of B, a certain

1 [Reported by William W. Story, Esq.]

due bill, in order to induce A to become a party to a general assignment in favor of B's creditors, which never took effect; and B subsequently became a bankrupt under the act, it was *held*, that the payment of the due bill, as set forth in the petition, was not a fraudulent preference in contemplation of bankruptcy,—and that the evidence showed, that K did not act as agent of B, and that if he did, since he concealed his agency from A. that he was to be treated, as to A, as a purchaser and not an agent.

[Cited in brief in Tucker v. Daly, 7 Grat. (Va.) 331.]

2. A creditor is never held to be unduly preferred by a bankrupt, unless he understand at the time, that he is dealing with the bankrupt, or with his avowed agent, for security or payment out of the funds of the bankrupt.

3. The assignee of a bankrupt has only the right of the bankrupt, except in cases of assignment or transfers, or agreements with one creditor in fraud of the others.

[Cited in Schulze v. Bolting, Case No. 12,489; Carr v. Gale, Id. 2,435; Re Wynne, Id. 18,117.]

4. The phrase "contemplation of bankruptcy" means contemplation of insolvency and total stoppage of business.

This case was adjourned from the district court into this court on account of the district judge being interested therein. The original petition in equity was in substance as follows: "Respectfully represents Henry Winsor of Boston in the county of Suffolk in said district, merchant, that on the seventh day of February, 1843, Samuel H. Babcock of said Boston, merchant, filed his petition in bankruptcy, and was declared bankrupt on the fourteenth day of April in the year 1843, and that your petitioner was afterwards duly appointed and qualified assignee of the estate of said bankrupt, and accepted that trust. That on or about the twenty-eighth day of December, 1842, the said bankrupt made or attempted to make an assignment of his goods, credits and effects, for the benefit of his creditors, and that on or about the said twenty-eighth day of December, the said bankrupt called upon one Hugh R. Kendall, of said Boston, merchant, and asked him to execute the said attempted assignment. That the said Kendall refused to do so, unless the said Babcock would pay, or cause to be paid, a certain due bill, dated January nineteenth, A. D. 1842, signed by said bankrupt, and payable to the said Kendall on demand, with interest,—said due bill being for the sum of one thousand dollars; and that the said bankrupt on or about the same twenty-eighth day of December, and for the consideration that said Kendall should sign the said assignment, furnished the money to one I. M. Smith, and caused him to pay the said due bill, together with the interest thereon, to the said Kendall, and said Kendall shortly afterwards executed the assignment. That the said payment was made by the said bankrupt for the purpose of giving said Kendall a preference or priority over the general creditors of said bankrupt. And

that if the said payment was not made for such purpose, it was made by said bankrupt in contemplation of bankruptcy, and the said Kendall was not a bona fide creditor or purchaser without notice. The said payment was made within two months next before the filing of the petition, upon which said Babcock was declared bankrupt as aforesaid, and the same is a fraud upon the bankrupt act of the United States passed August 19, A. D. 1841 [5 Stat. 440]. The petition prays that Kendall may be ordered and pay over to the petitioner, as said assignee, the said sum and interest so received by him, and to pay to the petitioner his costs and counsel fees in this behalf incurred, and for such further and other relief as the nature and circumstances of this case may require."

The answer of the respondent was in substance as follows: "The respondent in his answer admits, that he did on the twenty-eighth of December, 1842, and for a long time previous thereto, hold a due bill signed by the said Babcock, dated January 19th, 1842, which, from the circumstances under which it originated, was regarded by this respondent, and as he believes by the said Babcock, as a debt, which said Babcock was not only legally, but in honor bound to pay. That he was applied to some days previous to December 28th, 1842, by the said Babcock, to become a party to an assignment, which the said Babcock represented he had made for the benefit of his creditors, and to avoid all occasion of becoming bankrupt under the laws of the United States,—which this respondent refused to do. But he denies that he made any agreement to sign the same, upon being paid the amount of the said bill, and avers that his motives and reasons for refusing to execute the said assignment were, because said Babcock had not paid said bill as this respondent conceived he ought in honor to have done, and because this respondent then had a suit pending in the court of common pleas in the county of Suffolk against the said Babcock, upon the debts due him from the said Babcock, wherein he had attached said Babcock's property; and because, also, he had another suit then pending in the said court against the Dudley Woollen Manufacturing Company, upon a draft drawn by said company and accepted by said Babcock, which constituted the principal debt due from Babcock to this respondent, in which suit this respondent then supposed he had obtained some security by an attachment on the property of said company. And the respondent denies, that the said due bill was paid to him by said Smith in consideration, that he should sign the said assignment, and avers, that some days after the application to him by the said Babcock hereinbefore mentioned, to wit, on December 28th, 1842, the said Smith applied to this respond-

30 FED. CAS.—21

ent to purchase the said due bill, giving as his reason, that there was a difficulty in the said Babcock's family concerning said due bill, and he, Smith, wanted to purchase it for the sake of peace, (he the said Smith being, as this respondent now believes, a son-in-law to the said Babcock.) That the said Smith purchased said due bill of this respondent, giving him therefor his, the said Smith's, note for the amount due on said bill, payable in sixty days and endorsed by a good and sufficient endorser, which note was afterwards taken up by the said Smith on or about the seventh of January, 1843, upon this respondent's discounting two per cent. from the amount of the said note. And the respondent denies, that he knew at any time or now believes, that the said Smith, in purchasing said due bill, was acting for said Babcock, but on the contrary, this respondent, at the time of his said transactions with said Smith, believed and still believes, that he, the said Smith, was acting for himself. And this respondent admits, that he did afterwards execute the said assignment provisionally, and upon certain conditions, which to the best of his belief were, that those of said Babcock's creditors, who had attachments upon his property, should become parties to the said assignment within a limited time. And this respondent doth not admit, that the said Babcock gave the said Smith the money to pay said due bill, and does not believe, that said Babcock has ever paid the amount of said due bill to the said Smith, and requires the said complainant to prove the said facts, if they are material. That said Smith, as he is informed and believes, came to this respondent's store during the absence of the said respondent, a few days after this respondent had signed said assignment, and brought with him the said due bill, and left the same with said respondent's clerk, with a request that this respondent would prove the said due bill under said assignment, and receive a dividend thereon in Smith's behalf, but in his, the respondent's name, alleging as a reason, that he the said Smith did not wish to have it known that he, the said Smith, had purchased said due bill. This respondent, however, upon being informed of the said request, refused to comply therewith, and returned said due bill to said Smith. And this respondent denies that any of the transactions had between him and Smith were had for the purpose of giving him a preference or priority over the other creditors of said Babcock, and denies, that any payment was made to him by said Babcock within two months before the filing of the petition, and prays that the said petition may be dismissed, and that he may be allowed his costs and counsel fees in this behalf sustained."

Mr. Gray, for assignee.
Edward D. Sohier, for respondent.

STORY, Circuit Justice. The whole question in this case turns upon this, whether the due bill owing to Kendall was paid by Babcock in contemplation of bankruptcy, and with an intent to give Kendall a preference over the other creditors, contrary to the intendment of the second section of the bankrupt act of 1841 (chapter 9). To establish such a case, several facts must concur. The due bill must have been paid by Babcock or his agent, acting as such, out of his, Babcock's funds; it must have been in contemplation of his bankruptcy; and it must have been with a design to give a preference to Kendall.

I shall not dwell a moment upon the consideration, of what in point of law is the meaning of the words "in contemplation of bankruptcy," in the sense of the bankrupt act of 1841 (chapter 9). It has been often adjudged by this court to mean contemplation of an insolvency and inability of the debtor to pay his debts, and also the contemplation of a total stoppage and destruction of his business consequent thereon. In the former cases, arising under this same bankruptcy, (and the evidence in this case on the same points does not materially differ in its aspect,) I have had occasion to state that the general assignment made by Babcock did not, under all the circumstances, and with reference to the stipulations contained therein, constitute an act of bankruptcy, and that, as it became a nullity from the non-compliance of all his creditors with the conditions of that assignment, it might be laid out of our consideration. The very object of the payment of the present due bill, even according to the view of the case now asserted by the assignee, was to procure the assent and signature of Kendall to that assignment. His signature and assent were obtained; but it became ineffectual, because the assignment did not ultimately become a valid or operative instrument. It might, therefore, be truly said, that the object of the negotiation for, and payment of, this due bill was not to give an undue preference to Kendall in contemplation of bankruptcy, in the sense of the bankrupt act, but it was to give validity and effect to that instrument, so as to supersede the necessity of going into bankruptcy. In this view of the matter there is much difficulty in maintaining this point as propounded on behalf of the assignee. The case bears a close analogy to that of Wheelwright v. Jackson, 5 Taunt. 109.

But this point is the less material in this case, because the other points of the case seem to me, upon the evidence, decisive against the assignee. In the first place, it is, in my judgment, fairly made out by the evidence, and confirmed by the answer of Kendall, that the negotiation of Smith with Kendall was not for the payment of the due bill by Smith on account of or as agent of Babcock. Smith came avowedly as a friend of the family to purchase the bill on his own account, and not to purchase it for Babcock. The due bill was, upon the representations of Smith, sold to him as a purchaser on his own account, and he gave his personal security to Kendall, by a note, with his partner as endorser for the payment thereof. Non constat, if he had come to Kendall avowedly to pay the due bill out of Babcock's funds, and on his account, that Kendall would have taken the funds, or agreed to the arrangement; for if Babcock should subsequently become a bankrupt, the transaction might be liable to be overhauled as a fraudulent preference under the bankrupt act. If, on the contrary, Smith became a purchaser on his own account, then the transaction was susceptible of no such interpretation; for it would then amount to a mere assignment or transfer of the due bill to Smith, and make him, instead of Kendall, a creditor of Babcock. Besides, Smith does not pretend that he ever told Kendall that he came to purchase for Babcock or with his funds; and Kendall had not the slightest reason, from the attendant circumstances, to believe that he did. The professed, or at least the apparent object, was to purchase the due bill on his, Smith's, own sole account, to be used by him as he should choose; and enforced or not according to his pleasure. So Barnes expressly testifies; and Kendall solemnly asserts that he sold the bill to Smith upon the faith of this statement. Then, again, it is difficult to perceive any very satisfactory evidence in the case to establish the fact, that Smith did purchase and pay for the due bill out of the funds of Babcock. In fact, he paid the amount by his own promissory note, endorsed by his partner; and this very circumstance shows, that the funds actually appropriated by him for the payment were his own funds. It is true, that he or his firm, was owing Babcock a part of the money on a due bill, and that he obtained some other funds from Leonard, and other persons, which seem to have been handed to Smith for the purpose of paying the due bill to Kendall. But the money was not, strictly speaking, so applied; and Smith (as Barnes testifies) afterwards treated the due bill, not as an extinguished debt of Babcock, but as a subsisting debt; and he requested Kendall to take back the due bill and prove it as a debt against Babcock, as if it were his own, as he, Smith, did not wish to be known in the business at all. There is nothing in Smith's deposition which can fairly be said to shake or overcome the credibility of Barnes's testimony. Babcock's testimony has been introduced into the case; and certainly it does not exactly correspond with that which, upon his examination in bankruptcy, when he applied for his discharge, he gave as to the nature and character of the transaction. He then represented, in effect, that the funds to take up the due bill of Kendall were not his own funds; but were

furnished by friends. How far that statement coincides with or contradicts his present testimony, I do not now stop to inquire. There is certainly much looseness in his testimony; and it may arise from the infirmity of his memory, without any deliberate intention to falsify the actual facts. Perhaps the different statements might be reconciled, if Babcock had been called upon to explain the apparent discrepancies. But, as my judgment in the present case does not turn upon any investigation of this sort, I am content to leave the testimony as it is.

What I do proceed upon is this: That even if Smith did actually use the funds of Babcock and with his consent, in paying the due bill; yet if Smith concealed that fact from Kendall, and Kendall, in the whole transaction and arrangement, understood from Smith that he was dealing with him as a purchaser on his own account, and not as an agent of Babcock, it is not now important either for Smith, or for Babcock, or for Babcock's assignee, to set up that concealment as a ground to recover back the money from Kendall. Kendall dealt with Smith as a principal and not as an agent. He sought no preference under the bankrupt act, and he had no means of knowing that Babcock was negotiating with him to give him any preference. To allow Kendall's title to the money under such circumstances to be impeached by Smith or by Babcock, would be in effect to enable them to perpetrate a fraud upon an innocent creditor, who supposed, and had a right to suppose, that he was making a sale to Smith, and not receiving payment from Babcock. I know of no case, where a creditor has been held to be unduly preferred by a bankrupt, unless, at the time, the creditor clearly understood himself to be dealing directly with his agent for a conveyance, security, transfer, or payment, from or out of the funds of the debtor, thus withdrawing a part of the common funds appropriated by law for the benefit of all the creditors. Payment or security by a third person out of his own funds, and not out of those of the debtor, would not fall within the predicament contemplated by the second section of the bankrupt act of 1841 (chapter 9). In general, the assignee of a bankrupt does not stand in a better predicament than the bankrupt himself, and can claim only what the latter might claim. See Wheelright v. Jackson, 5 Taunt. 109. An admitted exception is, where the conveyance, security, assignment, transfer, or negotiation is made in fraud of the other creditors, or is to give an unlawful preference. There may possibly be some other exceptions; but certainly this is the most prominent and important. But where the assignee seeks to recover from a creditor a sum of money, paid to him by a third person, for the debt due to such creditor by the bankrupt, it ought to appear, that the creditor knew that the payment was made out of the bankrupt's funds, or on his

account, so as to extinguish the debt, and not that the creditor was misled by such third person into the belief, that it was a purchase of the debt on his own account, and was a mere assignment to himself for his own benefit, and to be paid for out of his own funds.

My opinion, therefore, is, that the petition of the assignee is not maintainable, and that it ought to be dismissed, with costs to the respondent.

[For other cases involving the estate of this bankrupt, see Cases Nos. 696, 697, and 17,884.]