# Case No. 576.

## ASHBY v. STEERE.

[2 Woodb. & M. 347.][1]

Circuit Court, D. Rhode Island. Nov. Term, 1846.

BANKRUPTCY—PREFERENCES — INSOLVENCY —BURDEN OF PROOF.

1. Under the bankrupt law, a sale of property to a creditor, more than thirteen months before the debtor applied for the benefit of the law, if bona fide, and without knowing that the debtor contemplated going into bankruptcy, is valid.

[See note at end of case.]

2. Such a sale, if done as a preference of one creditor over another, when the debtor contemplated going into bankruptcy, might prevent him from getting his discharge, and might be in him an act of bankruptcy, but still be valid in regard to the creditor.

[Cited in Whetmore v. Murdock, Case No. 17,510.]

[See note at end of case.]

3. In England, the contemplation of bankruptcy means the benefit of the bankrupt act, but here it has been construed to mean insolvency.

[See Morse v. Godfrey, Case No. 9,856; McLean v. Lafayette Bank, Id. 8,888; Atkinson v. Farmers' Bank, Id. 609; Everett v. Stone, Id. 4,577.]

4. The preference of a creditor is not the payment of one in the ordinary course of business, or under threats or suits, but selecting one, as a relation or friend, or settling with him before due, or on the eve of bankruptcy, when not pushed by him.

[Cited in Whetmore v. Murdock. Case No. 17,510; Grow v. Ballard, Id. 5,848.]

5. The burden of proof, and duty to offer facts which tend to impeach or annul a sale, lie on the party who attempts to avoid it.

[6. Cited in Carr v. Gale, Case No. 2,435, to the point that an assignee in bankruptcy can sue fraudulent grantees in order to regain possession of the bankrupt's property.]

At law. This was an action of trover for a conversion, alleged to have been committed Dec. 21st, 1841. The plaintiff claimed as assignee of a bankrupt, R. R. Ricker, and it appeared in evidence that R. R. Ricker was one of a firm of traders, for whom the defendant had become indorser, and to whom he had loaned money; and, at the time of the alleged conversion, pressing for payment, R. R. Ricker, the acting partner, conveyed to him in discharge of his debts and responsibilities their stock of goods, at an agreed price. Upon this, he entered into possession of them, and employed R. R. Ricker as his salesman. The firm had then due to them nominally nearly $10,000 in notes and accounts, and were sued soon after as well as previously by some of their creditors, a portion of whom, but not all, they were able to pay. R. R. Ricker did not file a petition for the benefit of the bankrupt act till Jan. 23, 1843. Doing it then, the plaintiffs were appointed his assignees, and brought this action Feb. 18, 1843, for the goods sold to the defendant

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

in December, 1841. The plea was not guilty, and on the evidence in the case, the court instructed the jury, that after the great lapse of time between the sale of the goods to the defendant, and the application for the benefit of the bankrupt act, being nearly fourteen months, if they believed the sale was bona fide and for a valuable consideration, the defendant was entitled to retain the property; and that it was not proof the sale was made mala fide, if the vendor knew the vendee would probably obtain the payment of his debt, when others would not; unless the debtor made the sale in contemplation of bankruptcy, and one of his leading objects was to contravene the policy of the bankrupt act, by giving a preference to the defendant, and the defendant was probably aware of that fact. The jury returned a verdict for the defendant.

The plaintiff filed a motion for a new trial, a copy of which is annexed. "And now on this seventh day of the term, after verdict and before judgment, the plaintiff in said cause moves that said verdict should be set aside and a new trial be had, for the following reasons:—

"Because the court declined to charge the jury as requested by the plaintiff's counsel; 1. That a conveyance by a person in insolvent circumstances of the whole of his property, or that visible portion of it with which he was carrying on business, with the intent thereby to give a preference, was an act of bankruptcy under the bankrupt act, and void; and therefore was not within the exception of the first proviso of the second section. 2. That the circumstances of such a transfer, as above stated, of the whole or a large portion of his property by the debtor, was sufficient notice of contemplation of bankruptcy in him to the creditor receiving the payment or transfer for the purpose of preference as aforesaid. 3. That a payment or transfer of property made by a person in insolvent circumstances to a creditor or indorser, with the intention of giving a preference to that creditor or indorser over the rest of the creditors, was (if the jury should so find the facts) absolutely void under the second section of the bankrupt act, and not within the exception in the first proviso. And also, for that the court charged the jury, that such payment or conveyance by way of preference was a bona fide transaction, and within the first proviso of the second section, provided the jury should find that the transaction took place more than two months before the petition in bankruptcy, and that an adequate consideration was given for the property, instead of charging that said proviso of the second section did not protect any conveyances made in contemplation of bankruptcy by way of preference, which are declared fraudulent in the enacting part of the section. Wherefore, because of the misdirections in law above stated, the plaintiff prays the court that said verdict may be set aside, and a new trial be granted in the premises." [New trial refused.]

Jencks, counsel for plaintiffs.
R. Greene and Steere, for defendant.

Before WOODBURY, Circuit Justice, and PITMAN, District Judge.

WOODBURY, Circuit Justice. A copy of the motion in this case for a new trial has not been brought to my attention till the present term; nor has any argument been presented till now. The facts and the law, as they appeared at the trial, are not so fresh in my recollection, therefore, nor are they so full in my minutes as could be wished. The bankrupt law, under the provisions of which this dispute arises, having long since been dead, it is not of so much public importance how its leading enactments are to be construed. But these particular parties have their rights under it; and hence it is necessary to dispose of them in conformity to that law. Consequently I shall proceed to do it in a manner as true to its spirit and design as the time allowed for investigation will permit, and without longer and injurious delay.

Some of the difficulty here and in previous cases under the bankrupt act has arisen by not discriminating well between the different objects of different parts of the act, in regard to subject matters, as well as persons. Some clauses are severe if not penal against the bankrupt in certain events, but do not impair the rights of third persons, such as purchasers, unless they co-operated in his misconduct. Thus the objects of the first and second sections of the bankrupt law, under which the questions arise here, were threefold. One was to define, to some extent, what conduct of the bankrupt himself should constitute an act of bankruptcy, so as to justify his creditors to have him proceeded against under the law, and his property divided equally among them. The other was to define some of the misbehavior, which should prevent a trader, when becoming a bankrupt, from getting his discharge, and this as a penalty for such misbehavior. And another, and the only one material in the present case, was to declare what conveyances by a person becoming bankrupt should be void, or annulled as to third persons, no less than himself, so as to require, under the policy of the bankrupt law, that the property be restored to the general assets of the bankrupt, and to be apportioned equally among his creditors. Thus for instance, it may be an act of bankruptcy, so as to justify proceedings in bankruptcy against the debtor, if he secrete himself, or abscond, or make any fraudulent conveyance. And it may prevent him from getting a discharge, if he does that or makes any preferences among his creditors, considered by that act unlawful, or any material concealment of his estate.

But what, as a matter of public policy,

shall justify the avoidance of sales to third persons, or sales and payments to creditors, and after what length of time, or under what defects and misbehavior, such sales should be disturbed, or overturned, is entirely a different question, depends in part on the conduct of the creditor as well as the debtor, and in some degree rests on different principles and provisions in the law. No titles would be safe where a bankrupt system prevails, if, after one or two years, some of the parties to them should choose to go into bankruptcy, and those titles are all then to be destroyed, on account of some secret, unrecorded taint, though the purchaser acted bona fide, gave a full and valuable consideration, and had no notice of any prior act of bankruptcy, or intent of the vendor to go into bankruptcy. Hence the second section does not avoid any sales of that character, if made more than "two months before the petition filed against him or by him;" viz. the vendor and debtor.

. The present case exhibits a sale made more than a year previous, so that the only remaining considerations are, whether it was bona fide and without any "notice of a prior act of bankruptcy, or of the intention of the bankrupt to take the benefit of this act." Now the jury have found that it was bona fide and for a valuable consideration; and there was, in truth, little controversy on that point at the trial. Next, there was no evidence except inferential, that the bankrupt then, at the sale, contemplated taking the benefit of the act, or if he did, that his intention was known to the defendant. This last is the essential condition precedent for annulling the sale, and though the bankrupt was on the stand as a witness, and knew whether he then notified the defendant of such an intent, and whether he even entertained such an intent, yet the plaintiffs, whose business and duty it is to show the facts, which invalidate a sale, put no such questions to him, to draw out those decisive facts. He was asked if the defendant knew his embarrassments, and he replied, that the defendant probably suspected them, but that was all. And the bankrupt afterwards paid some other debts, and attempted a compromise with all his creditors.

In Gorham v. Stearns, 1 Metc. [Mass.] 366, an assignment was made to a creditor to pay him, in choses in action, only two days before he went into insolvency, and after goods had been attached. But when he conveyed them, he did not contemplate going into insolvency, and the transfer was held not to be void as to other creditors. That statute and the bankrupt act use similar language on this. The burden and duty lie on assignees to show that the transfer was with a view to give a preference, and in contemplation of bankruptcy. Id. 367. It was admitted in the case in Metcalf, that the debtor was insolvent, which is the chief fact here, from which it is argued, that the

creditor should have inferred he was looking to the insolvent system, and meant to violate its spirit. Id. 368. But almost the whole facts here tended to rebut such an intent at that time, as the bankrupt law was not then in operation, and he did not apply for the benefit of it for more than a year afterwards; and sought in the mean time to effect a compromise with his creditors. So most of the circumstances here actually put in tended chiefly the other way, rather than to support this objection. Had the debtor then contemplated taking the benefit of the act, he would probably have applied for it in the February after, when the act went into effect. But he delayed it for more than a year; he delayed it, too, under suits and inconveniences, which would have probably hastened his application, had he intended in the December previous to have made one. The only other evidence at all relied on to justify a different conclusion, is the naked fact of the sale of most of his tangible property. But he retained some of that and a large amount of notes, and postponing, so long after, to go into bankruptcy, looks more like an original design not to do it at all; because, in that event, he would be obliged to surrender all his notes as well as other estate. The existence of such an intent being therefore doubtful, and not attempted to be proved by the best testimony, the bankrupt himself; and these remarks applying still more strongly to the evidence on the next point, the most important one, whether a notice was given to the defendant of such an intent; there is nothing left to avoid the sale, unless some prior act of bankruptcy had occurred, of which Steere was apprised. But nothing of that kind is pretended. These being the facts and the law, was there any direct or incidental ruling by the court, on any of these questions, which was erroneous?

It is said that the jury were instructed that a preference of one creditor over another, by a bankrupt, would not alone avoid such a sale, and that in this there was a misdirection. I have no doubt that the bankrupt law intended to prevent a bankrupt from having his discharge, if, "in contemplation of bankruptcy," he made a preference of one creditor over another; yet I never supposed that either of these would alone be sufficient to avoid the sale. Not only both must be made out distinctly, i. e. a preference and a contemplation of bankruptcy, in order to punish or disfranchise the bankrupt as a species of criminal; but the creditor was not to suffer penally likewise, by having his purchases destroyed, unless he had knowingly co-operated in what was wrong. This question, of a punishable preference by a debtor, involved two inquiries; 1. Did the bankrupt make a payment or conveyance in contemplation of bankruptcy? and, 2. Did he do it for the purpose of giving a preference? In relation to the first question, the

rule in England was, that the phrase "in contemplation of bankruptcy," implied that the debtor must have had the bankrupt law in his mind, at the time of the payment or conveyance. Cooke, Bankr. Law, 147; Hopkins v. Grey, 7 Mod. 139; [Morgan v. Brundrett,] 5 Barn. & Adol. 289; [Fidgeon v. Sharpe,] 5 Taunt. 539; McLean v. Lafayette Bank, [Case No. 8,888.] But in this country the phrase had been construed to mean, "in contemplation of becoming insolvent, and being compelled to wind up business." 5 Law Rep. 289, 296, 310; [Hutchins v. Taylor, Case No. 6,953; Arnold v. Maynard, Id. 561; Wakeman v. Hoyt, Id. 17,051;] 6 Law Rep. 16, [Dennett v. Mitchell, Case No. 3,789;] Morse v. Godfrey, [Case No. 9,856.]

These decisions, it is true, were not made under this section, but were given in cases where the question was, whether an act of bankruptcy had been committed or not. But, for the purposes of the trial, the court ruled that the same construction applied to the present case. The jury, in order to find the bankrupt guilty of this, must find that, at the time of making the conveyance or transfer, he was conscious of his insolvent condition, and expected to be compelled to wind up his business. It was not enough that he knew he had not then property enough to pay his debts, if he should be obliged to stop immediately; for a person who was indebted more than the amount which he possessed might, if a portion of his debts were not yet due, believe he should be able, before the time came round, to earn enough to meet them. If at the time, therefore, he did not contemplate becoming insolvent, he was not within the meaning of this clause of the second section. But if he did, so far as regards himself, perhaps bankruptcy was contemplated.

But the greatest error has been in considering almost every sale or payment, just before stopping payment, as an illegal preference. The payment or conveyance must be for the purpose of preferring a creditor. There had been numerous decisions upon this point; and a number of instances might be mentioned, as illustrating the question of intent. Thus, if a debtor went to a particular creditor, hunted him up, picked him out from the rest, and paid him more in proportion than he could pay the others; if he elected to pay a relative to whom he was indebted; if the transfer or conveyance was done secretly; if it was out of the usual course of business, in a new, extraordinary, or unusual manner; if it was just in the hurry of going into insolvency, a day or two or an hour or two before making the petition; if payment of a debt was made before it became due; or if a debtor should convey away the whole of his property on the eve of bankruptcy. Wakeman v. Hoyt, [Case No. 17,051.] Any of these circumstances would tend to show his intention to prefer the creditor to whom the payment or transfer was made. On the other hand, if the creditor had pressed hard for his debt; if payment was made under the pressure of importunity, or threats of legal process; if it was in the ordinary course of dealing between the parties; these would be circumstances tending to show that some other motive actuated the debtor, rather than the intention to prefer a creditor. And where the consequences of an act are penal, and a fair and honest motive is as consistent with the act as a fraudulent one, the former is of course to be presumed to have been the real and true one.

In England a sale of part of his effects by one insolvent is not fraudulent and void, if for a valuable consideration, or if it be to secure a surety or creditor, unless seeking as an object to give a preference, and to deprive others of an equal dividend. [Devon v. Watts,] 1 Doug. 86; Linton v. Bartlet, 3 Wils. 47; [Worseley v. Demattos,] 1 Burrows, 474, 477. It was of all his goods and property only two days before a bankruptcy, and to a brother conveyed, and still good. [Harman v. Fishar,] Cowp. 124; Hooper v. Smith, 1 W. Bl. 441; [Wheaton v. Sexton's Lessee,] 4 Wheat. [17 U. S.] 503. If the transfer is in the ordinary way, and is completed before an act of bankruptcy, the title passes. Cowp. 123. Or if it is a payment on legal process, though the night before one becomes a bankrupt; or if right to be done, and not a mere design to prefer; or if in pursuance of a previous agreement, as there it is not a mere preference. Here the conveyance was urged by the creditor; he was a surety also. It was right he should have been paid; and the bankrupt act was not resorted to for more than a year after; and, as a matter of fact, it probably was not a preference made from favor, and in contemplation and in fraud of that act.

It is bona fide, if done by means of acts of the creditor, his threats or persuasions, and it then has a good consideration. [Ogden v. Jackson,] 1 Johns. 370; [Phoenix v. Ingraham,] 5 Johns. 412; [Fulton Bank v. Benedict,] 1 Hall, 503; [President, etc., of Phoenix Bank,] Id. 575. It is never bad, if the debtor did not mean to prefer. [Worseley v. Demattos,] 1 Burrows, 478, 481; [Wheelwright v. Jackson,] 5 Taunt. 109; [Manton v. Moore,] 7 Durn. & E. [7 Term R.] 67. Beyond all this, a preference alone is not a void act at common law or in many states; neither is it under the bankrupt law itself, unless looking to that law, and meaning, by the preference, to thwart its policy. Hence, though a bankrupt is punished for making a preference, if made in contemplation of bankruptcy, as he then forfeits his discharge, because he thus attempts to thwart the law which he is about to resort to; yet such a preference by a debtor is no fault or crime in him, if not contemplating bankruptcy. Nor is the creditor ever punished, unless such motive existed and was known to him,

and certainly he is not at common law; nor is he under the bankrupt act to be punished, except so far as to carry out its policy against such knowing misconduct by those about to seek its aid, and others co-operating with them. If made here then by the debtor, without contemplating a subsequent resort to the law, the sale and preference are not void at all. Nor if made with such contemplation, though culpable in the debtor, it is not invalid as to the creditor, unless he took the property with notice of what was contemplated; and thus designedly co-operated against the act, and did it within the short period of two months prior to the debtor's application for the benefit of the act.

The purchaser as well as seller must have intended fraud, else being preferred by the debtor does not make the act void under 13 Eliz. Magniac v. Thompson, [Case No. 8,-956;] [Sexton v. Wheaton,] 8 Wheat. [21 U. S.] 238. The debtor has a right to prefer, and, if the creditor does nothing improper, it is valid. 2 McLean, 44, [Findlay's Ex'rs v. Bank of U. S.. Case No. 4,791;] [Holbrook v. Union Bank of Alexandria,] 7 Wheat. [20 U. S.] 556; Brooks v. Marbury, 11 Wheat. [24 U. S.] 78; The Experiment, 8 Wheat. [21 U. S.] 268; 4 Wash. C. C. 232, [Pearpoint v. Graham, Case No. 10,877;] Magniac v. Thompson, 7 Pet. [32 U. S.] 348. A bankrupt was originally defined to be one who concealed his property, or fraudulently evaded payment, and hence his bank for trade was broken up, and his assets divided. 2 Bl. Comm. 471, 472, c. 31. It was for a wrong act of his, and he was made to feel the penalties; so he is to feel them, if he tries to evade the law. But not innocent purchasers or innocent creditors, whom he had paid. The law wisely considers it is better that a preference of this kind which is good at common law, and when the creditor does not know of the design of the debtor to go into bankruptcy, and does not thus co-operate to defeat the policy of that law, should not be disturbed as to the public, after two months, as before named, than that such assets should go into a common fund for all creditors. See more cases, Com. Dig. "Bankrupt," C 9.

The limitations on the doctrine are safe, and I see no sufficient reason to change my views, that this is the true construction of the law. The cases chiefly relied on in support of the motion were, first, Peckham v. Burrows, [Case No. 10,897.] But there the court say it decided no law, but merely the fact, that a conveyance of most of one's estate, on the eve of the bankrupt law coming into effect, was in their opinion as a fact, "in contemplation of the" act, and a preference of one creditor over others. This impugns no rule now laid down as law for this case. When the court afterwards say, that the creditor need not know, though they think he had sufficient grounds to know the debtor contemplated going into bankruptcy, the court chiefly went on its own decision of this fact; and so far as the remark goes beyond that into a question of law, it is not sustained by the records, or by the general policy of the bankrupt act. Next, in Hutchins v. Taylor, [Id. 6,953,] the court merely decided what was an act of bankruptcy, and that in contemplation of bankruptcy meant a state of insolvency, as stated in the trial of the pending case. So in Arnold v. Maynard, [supra,] the court merely settled what was an act of bankruptcy, and that in contemplation of bankruptcy must mean a state of insolvency. So in Wakeman v. Hoyt, [supra,] the decision was as to what constitutes an act of bankruptcy, and not what avoids a conveyance. So, Albany Ex. Bank v. Johnson, [Case No. 133.]

In Dennet v. Mitchell, [Id. 3,789,] the opinion goes to show, that it is not in contemplation of bankruptcy unless the debtor appeared to regard himself as insolvent. None of these cases in respect to the law, seem to contravene the substance of what was ruled here; and most of them relate to questions connected with the bankrupt and his discharge, rather than his creditors or purchasers. There were several other questions started in the trial of this cause as to the validity of the proceedings in bankruptcy, on account of the partnership, the competency of the bankrupt as a witness, &c. But as they have not been relied on in argument, I refrain from going into them.

[NOTE. In discussing prohibited sales in contemplation of insolvency under the bankrupt act, Mr. Justice Davis, speaking for the supreme court of the United States, said: "It is for the interest of the community that every one should continue his business, and avoid, if possible, going into bankruptcy; and yet how could this result be obtained if the privilege were denied a person who was unable to command ready money to meet his debts as they fell due, of making a fair disposition of his property in order to accomplish this object? It is true he may fail, notwithstanding all his efforts, in keeping out of bankruptcy, and in that case any sale he has made within six months of that event is subject to examination. If it shall turn out on that examination that it was made in good faith, for the honest purpose of discharging his indebtedness, and in the confident expectation that by so doing he could continue his business, it will be upheld. On the contrary, if he made it to evade the provisions of the bankrupt act, and to withdraw his property from its control, and his vendee either knew, or had reasonable cause to believe, that his intention was of this character, it will be avoided. Two things must concur to bring the sale within the prohibition of the law,—the fraudulent design of the bankrupt, and the knowledge of it on the part of the vendee, or reasonable cause to believe that it existed." Tiffany v. Lucas, 15 Wall. (82 U. S.) 410. For instances in which a sale has been set aside because the vendee had reasonable cause to believe the vendor to be insolvent, etc., see Babbitt v. Walbrun, Case No. 694; Brooks v. D'Orville, Id. 1951.]