# Fenlon *versus* Lonergan.

That a debtor, in contemplation of applying for the benefit of the Bankrupt Act of 1841, confessed a judgment to his creditor, for the purpose of giving him a preference over the general creditors, without such creditor being in any way a party to the fraudulent purpose, is not sufficient to avoid the title of the creditor to the real estate of the debtor, purchased at a judicial sale under execution on such judgment.

A judgment confessed or preference given in fraud of the bankrupt act, can only be controverted or set aside in the proper bankrupt court.

The bankrupt act, in declaring preferences void, prescribes a rule for administering the bankrupt's estate in the bankrupt courts, but does not define the rights of the parties out of it.

ERROR to the District Court of *Allegheny county.*

This was an action of ejectment by Grace Lonergan against James Fenlon, to recover 30 lots in the Sixth Ward of the city of Pittsburgh. The plaintiff claimed under Kennedy Lonergan, by virtue of proceedings in bankruptcy had in the District Court of the United States for the district of Ohio, on the application of Lonergan. His petition was presented the 20th December, 1842, and, *inter alia,* contained a description and return of the property in dispute. On the 4th of February, 1843, he was declared a bankrupt. William Barry, his assignee in bankruptcy, on the 16th December, 1852, sold the lots in dispute under an order of the court to the plaintiff, and afterwards made and delivered to her a deed for the same.

[Fenlon *v.* Lonergan.]

Fenlon, the defendant, showed a judgment, entered in the District Court of Allegheny county, in his favour, against Kennedy Lonergan, on the 16th July, 1842, on a bond with warrant of attorney, dated 24th March, 1842, for the sum of $5083.44, and that a *fieri facias* issued upon the judgment, and was levied on the lots in dispute, and that all were afterwards, on a *venditioni exponas*, sold to him by the sheriff, on the 19th May, 1843, and a deed duly executed and delivered to him for the same.

The plaintiff proved that at the time the bond was given, upon which the judgment in favour of Fenlon was entered, and under which the property was sold to him, Lonergan contemplated applying for the benefit of the bankrupt law of 1841.

On the trial in the court below, the parties presented various points to the court, and prayed their instruction to the jury thereon.

The plaintiff's third point was as follows:—

That if the jury believe, from the testimony of John McDevitt, the bond given by Kennedy Lonergan to James Fenlon, dated the 24th of March, 1842, and the warrant of attorney to enter judgment on the same, were given by said Lonergan in contemplation of bankruptcy, and for the purpose of giving the said Fenlon a preference or priority over the general creditors of the said Lonergan, the judgment entered thereon was utterly void, and a fraud upon the bankrupt act; and that the said judgment formed no lien upon the real estate of the said Lonergan in Allegheny county, and the title set up by the defendants under the sale, made under that judgment, is totally worthless.

The defendant's third point was as follows:—

If the said bond and warrant of attorney were given for a *bona fide* consideration, but in contemplation of bankruptcy, the judgment entered in pursuance thereof cannot be assailed in this proceeding, there having been no decree of the District Court of the United States destroying or impairing its validity, or in any way affecting the rights of the judgment-creditor.

The court below (HAMPTON, P. J.) affirmed the plaintiff's point, and negatived the defendant's; reserving the questions on these and other points.

The jury found for the plaintiff; and the court afterwards entered judgment on the verdict on the reserved questions.

The defendant sued out this writ, and assigned the ruling of the court below on these points, *inter alia*, for error.

*J. Mellon* and *G. P. Hamilton*, for plaintiff in error.

*Shaler* and *Stanton*, for defendant in error.

The opinion of the court was delivered by

[Fenlon v. Lonergan.]

LOWRIE, J.—All the questions of law raised in this case are expressed in the points submitted by the counsel on the trial. In charging the jury, the court affirmed the third point of the plaintiff below, and thereupon the defendant excepted and had his bill sealed. All the other points were reserved, and afterwards decided against the defendant, and the bill of exceptions sealed to this decision puts the points upon the record for the purpose of review here.

The land in controversy is held by the defendant under a judicial sale to himself, on a judgment in his own favour, against one Lonergan, and the jury have found that Lonergan confessed that judgment in contemplation of bankruptcy, and for the purpose of giving this defendant Fenlon a preference over his general creditors. Is this fact sufficient to avoid Fenlon's title, without it being proved that he was in any way a party to the fraudulent purpose of Lonergan?

We think it is not, and that such is the rule of the second proviso of the second section of the bankrupt law. It is not found that Fenlon was guilty of any wrong towards the general creditors, and therefore we find no legal reason, and certainly there is no moral one, for wiping out his just claim. But if the contrary is the rule, then he loses his debt, and is decided to have rightly lost it, because of the sin of his debtor. We cannot think that the bankrupt law is so unreasonable: 3 McLean R. 185, 587; 2 Woodb. & M. 347; 3 Story 507; 4 State R. 284.

The law declares that certain acts done by a debtor in contemplation of bankruptcy, "shall be deemed utterly void;" but this means only that, when controverted in proper time and place, and by proper parties, the court shall treat them as void. And surely no court would treat a judgment confessed in contemplation of bankruptcy as utterly void, after it has been carried into execution by a sale of the debtor's property to an innocent purchaser. Such a fraud upon the bankrupt law would have to be brought in question in some other form.

And suppose the judgment-creditor to have been entirely ignorant of his debtor's intention to evade the bankrupt law, and that he never learns it until ten or a dozen years after he has executed his judgment, and bought the land under it, and after all the bankrupt's estate has been settled up and divided among other creditors; must every court still deem as utterly void the judgment and the title derived under it? This is impossible.

The Bankrupt Court may very safely and properly treat preferences as void, and set them aside, irrespective of any question of fault in the creditor; because then he is not allowed to suffer, but is let in upon the assets on the same terms as other creditors, and that was the very purpose of the second section. It provides for avoiding, not the debt, but the means of securing it a prefer-

[Fenlon *v.* Lonergan.]

ence. It is a rule for administering the bankrupt's estate in the Bankrupt Courts, rather than a definition of the rights of the parties out of it.

The defendant's seventh point asserts the proposition that this suit is barred by the eighth section of the bankrupt law; and it is argued that this is so even if the creditors did not, within the two years limited by the act, know of the preference. However this may be (24 *State R.* 54, 17 *Howard* 315), we do not think it necessary for us to decide it.

The section that declares a preference void, immediately adds that the bankrupt assignee may claim and recover the same as part of the assets, and the debtor shall receive no discharge. Of course, then, the assignee may have a judgment set aside that is affected by this vice; and so of any sale made under it to the preferred creditor. But here is revealed the purpose of treating the preference as void; it is that the property may become part of the assets, and that the bankrupt may not be discharged. The process for ascertaining the fact of preference is, therefore, plainly a part of the bankrupt proceeding, and does not fall within the province of any other court, or furnish the foundation of an independent action.

And the bankrupt courts have full power over such a question, and we think that it is exclusive. The fifth section gives them power to set aside any debt founded on fraud or illegality; and the sixth section gives them jurisdiction in all cases and controversies arising between the assignee and the creditors, and between the assignee and the bankrupt, and over all things done under or in virtue of the bankruptcy, until the final settlement of the estate and close of the proceedings. And the eighth section gives them jurisdiction in law and equity in all suits which the assignee may bring against any person claiming an adverse interest touching any property or rights of property of the bankrupt. If the bankrupt court had inquired into this alleged preference, and set it aside, that would have been conclusive. We have no business with it, as we should have had, if Fenlon had obtained this land by any fraud not connected with the bankruptcy. The effect of controverting a preference there and here are totally different. Done there, the creditor is reduced to an equality with others. Done here, he is deprived of his rights as a creditor. Done there, the bankrupt law is fully administered. Done here, it is not; and this difference points to the forum that ought to decide the question. We think, therefore, that the defendant's third point ought to have been affirmed.

The other points involve questions of fact not found by the verdict, and not appearing in the evidence, and we can express no opinion upon them.

Judgment reversed and a new trial awarded.