Ogden & Thomas, Assignees of W. & D. A. Cummings, Bankrupts, *against* A. Jackson.

*C* being in insolvent circumstances, on the 14th *November*, 1803, assigned over a bill of lading of goods, at sea to *I*, in trust for *M*, a *bona fide* creditor, provided that in case *M* sued him, then the property was to go to *T*. On the 14th of *Dec. C* became a bankrupt, and his assignees brought an action of *trover* to recover the goods in the hands of *I*. It was held that the assignment was a *voluntary* preference given to *M* on the eve of and in contemplation of bankruptcy, and therefore void.

THIS was an action of *trover.* At the *New-York* sittings, on the 15th of *December*, 1804, a verdict was taken for the plaintiffs, by consent of counsel, subject to the opinion of the court on the following case :

*W. & D. A. Cummings*, the bankrupts, in the month of *August*, 1803, before any act of bankruptcy had been committed by them, shipped a quantity of rice and other articles, to their correspondents at *Cape Francois* for sale and returns. On the 14th *November*, 1803, they assigned the original bill of lading, and invoice of the goods so shipped, by indorsing the same in the following words : " For a " valuable consideration, we hereby assign over all our " right, title and interest of, in and to the within invoice, " (bill of lading) to *Amasa Jackson.*" These were delivered to the defendant with a letter, on the same day, in which they request him to use his discretion as to insurance, &c. and after paying himself, out of the proceeds, such expenses as may have necessarily accrued, to pay to the Manhattan Company, on their account, $720 95 cts. or any part thereof which may be in his hands, and to pay over the balance to Mr. *Thomas Cummings*, of *Georgia*, on their account. In a postscript to this letter, the *Cummings* say, " our account with the Manhattan Company is overdrawn $720 95 cts ; this is intended to se-" cure them, let our business take what turn it may ; unless " they sue, and then you can pay the whole of the money " to *Thomas Cummings.*"

The defendant under the assignment, received the return cargo, shipped the 17th *November*, 1803, which he had caused to be insured, and for the nett proceeds of which, remaining in his hands, this action was brought. The *Manhattan Company* being informed of the assign-

ment, and upon the defendant's agreeing to pay them as soon as the proceeds came into his hands, re-delivered some plate deposited with them as security, and which belonged to the wife of one of the bankrupts, having been settled on her by marriage articles. The bankrupts were indebted to *Thomas Cummings*, of *Georgia*, to a greater amount than the proceeds of the cargo assigned to the defendant. On the 14th *December*, 1803, a commission of bankruptcy issued against *W. & D. A. Cummings*, who were duly declared bankrupts, and on the 20th *February*, 1804, the plaintiffs were appointed assignees.

*Pendleton*, for the defendant. The objections to the validity of this assignment, must arise out of the law of bankruptcy; for if not void by that law, it must be considered as valid, it being regular and in the usual mode of transferring property at sea. The decisions which have taken place on this subject, require some evidence of fraudulent intention, or a contemplation of bankruptcy at the time of the transfer. The only evidence of such intention, or view on the part of the bankrupt, was the simple fact that the assignment was made on the 14th *November*, 1803, and that the act of bankruptcy was on the 14th day of *December*, after.

[LIVINGSTON, J. Are we not to presume, that the jury did find that the assignment was made in contemplation of bankruptcy?]

The verdict was taken by consent, and with a view to bring the question before the court, whether the mere circumstance of an assignment to a particular creditor while the party was insolvent, was sufficient to render such assignment void. A debtor who is insolvent, may, in consequence of the pressure of a particular creditor, be induced to discharge the debt, or give security.* Lord Mansfield says, "a debtor may prefer a particular creditor, "though he cannot assign over to him the *whole* of his "estate, for that would be to defeat the bankrupt law." And the *master of the rolls*, in the case of *Small* v. *Oudly*,† observed, that a trader may be so circumstanced in regard

* 2 *Burrows*, 830, *Wilson* v. *Day*.

† 2 *Peere Williams*, 127. *Oudley*, 427. 4 *Burrows*, 2239

to some one creditor, that he honestly may, nay, ought to give him the preference.

That the notes of the *Cummings* were protested at the banks at the time, could not be considered as conclusive evidence of insolvency, so as to destroy the assignment. Where a creditor presses and threatens, and the debtor gives security, it is valid, though done on the very eve of bankruptcy.*

*\* Cullen* B. L. 281.

*Colden,* for plaintiffs. As nothing appears to the contrary in the case, the court are to presume that the jury had evidence before them to support their verdict; for if the assignment was not made in contemplation of bankruptcy, it must have been considered as valid, and the plaintiffs would not have been entitled to a verdict. Though insolvency *per se*, may not be sufficient evidence of fraud, where there is an absolute assignment, yet in the case of a conditional transfer, revocable by the party, it is otherwise. Here the assignment was conditional; the defendant was to pay over the proceeds to the bank, provided they did not sue, but in case they did, then the property was to go to *Thomas Cummings*. The defendant had no authority to make any agreement or arrangement with the *Manhattan Company*, but was to hold the property according to his trust. The bankrupts, or their assignees, might have revoked that trust, in case the *Manhattan Company* had thought proper to commence a suit against them. It is, in fact, a mere agreement to pay or assign over the property; there was no absolute transfer or actual delivery of it. But under what circumstances was this assignment made? It does not appear that the bankrupts were pressed by the *Manhattan Company*, nor was the assignment made to them in consequence of any threats; on the contrary, in case they sued, the property was to go to *Thomas Cummings*, another creditor, who, so far from pressing, must have been wholly ignorant of the circumstances of the bankrupts, and of the assignment thus intended for his benefit. It was then, a mere voluntary act of the party, and therefore, void as against the creditors in general.

*Pendleton*, in reply. This case certainly comes before the court on a verdict taken by consent, though the counsel on the other side, having been very recently engaged in the cause, may not know the fact. The verdict was a mere matter of form, and it was agreed that no objection should be made to the form of action. It was intended to submit the single question, whether the bare fact of insolvency would invalidate a security given to a *bona fide* creditor. That there was no actual delivery of the property makes no difference ; an order to pay out of a particular fund, or an agreement to assign, gives an equitable lien.* Nor does the circumstance of the transfer being revocable, vary the nature of the case.

SPENCER, J. delivered the opinion of the court. From the manner in which this case is presented, we are unable to perceive that a jury has passed on the question, whether the assignment was made in contemplation of an act of bankruptcy, &c. and to give a preference to individual creditors ?

I shall therefore, now assume the question to be, whether the facts stated in the case were in point of law, such as would warrant a jury in inferring the assignment to have been made with those views.

The defendant can be considered in no other light than a voluntary agent for the creditor, *T. Cummings*, with respect to whom, it does not appear that he had urged the bankrupts for security, or that he even knew of the assignment. Courts of law consider the property of the bankrupt completely at his disposal before an act of bankruptcy committed, so far as to protect a creditor in the receipt of money or the acquisition of goods, if done in the usual course of business ; indeed, if money be obtained or security given when a bankruptcy is inevitable, and even contemplated by the bankrupt, such acts are valid if the effect of measures taken by the creditor. It will not, however, be permitted that a person, insolvent at the time, and contemplating an act of bankruptcy, should parcel out his estate to such creditors as *he* may see fit to prefer ; this is opposed to the very genius of the bankrupt laws, which proceed upon a prin-

* *Atkyns*, 162. Brown v. Heathcote. 1 *Vesey, junior*, 280. *Yeates* v. *Groves*.

* 6 Term,
84. *Barnes* v.
*Freeland.*
2 East, 117.
*Neate* v. *Ball.*
4 Term, *b.*
212. *Smith* v.
*Hodson.*
*Cowp.* 122. 632.
*Harman* v.
*Fisher. Rust* v.
*Cooper.* 3 *Wil.*
47. *Linton* v.
*Bartlet.*
4 *Burr.* 2240.
*Alderson* v.
*Temple.*

ciple of equality and a just distribution.* It cannot be expected in general, that any other evidence should be offered of the intention of the bankrupt in parting with his property, than circumstances clearly indicating an approaching bankruptcy, and that the transaction is out of the *usual* course of trade ; and in this case the stopping of payment and insolvency are controuling circumstances. The language of the memorandum to the assignment, in addition to those facts, is proof of a contemplated bankruptcy ; they say " this " is intended to secure them let our business take what " turn it may." If the cause rested solely on the circumstances of the *Cummings* at the time of the assignment, and the manner in which that took place, I should think a jury might well pronounce it to be fraudulent and void.

This case presents the most decided marks of a voluntary preference by the defendants, on the eve of a bankruptcy and in contemplation of it, to favoured creditors, and this proof stands unexplained and uncontradicted by the bankrupts. Notwithstanding some loose cases upon this question, I am disposed to say, in the language of lord *Mansfield*, that " it never entered into the mind of a judge, to say that a " man in contemplation of an act of bankruptcy, could sit " down and dispose of his effects, to the use of different " creditors."

I have not taken notice of the debt due to the bank, because they had a pledge for it ; it is true, they gave it up on the defendant's undertaking to pay them out of the proceeds of the cargo, but that arrangement can have no bearing on this question. The plaintiffs must have judgment.

LIVINGSTON, J. gave no opinion.

Judgment for the plaintiffs.