CRAEFE (MORRELL v.). See Case No. 9,-819.

## Case No. 3,316.

### In re CRAFT.

[2 Ben. 214;[1] 1 N. B. R. 378 (Quarto, 89).]

District Court, S. D. New York, March Term, 1868.[2]

CONFESSION OF JUDGMENT—SUFFERING PROPERTY TO BE TAKEN—CONTEMPLATION OF BANKRUPTCY—INSOLVENCY—AMENDMENT.

1. Where a petition in involuntary bankruptcy alleged that the debtor had, "in contemplation of bankruptcy," given a confession of judgment to one of his creditors, on which execution had been issued and his property taken, and that this was done with intent to give a preference to the creditor, and, on the proofs, it appeared that the confession of judgment was given, and the property levied on under execution and sold, and that the debtor was insolvent at the time, but did not contemplate bankruptcy, or know that there was such a law as the bankruptcy law: Held, that the facts made out a case against the debtor, under the thirty-ninth section of the bankruptcy act. of suffering his property to be taken on legal process, with intent to give a preference to the creditor in question, the debtor being at the time insolvent.

2. There are four species of acts for which, when done by a person bankrupt or insolvent, or in contemplation of bankruptcy or insolvency, with intent to give a preference to one or more of his creditors, he may be put into bankruptcy, viz: (1) Making a transfer of his property; (2) giving a warrant to confess judgment; (3) procuring his property to be taken on legal process; and (4) suffering his property to be taken on legal process. The first three require affirmative action on the part of the debtor, but the last does not.

[Cited in Re Gallinger. Case No. 5.202; Re Dunkle, Id. 4.160; Re Heller, Id. 6,337; Re Lord, Id. 8,503.]

3. The act of the debtor in this case was not done in contemplation of bankruptcy. As the petition did not allege that the act was done when the debtor was insolvent, an adjudication could not be made upon it as it stood. but, inasmuch as the fact that he was insolvent appeared, and there was no surprise on the debtor, the case was a proper one for an amendment of the petition in that particular.

[Cited in Vogle v. Lathrop, Case No. 16,985.]

[Petition for an adjudication to declare Asa W. Craft an involuntary bankrupt.]

Benedict & Boardman, for creditors.
Edwin James, for debtor.

BLATCHFORD, District Judge. In this case a petition was filed by Hoyt, Carter & Co., August 28th, 1867, praying that Craft be declared a bankrupt. The petition sets forth, as alleged acts of bankruptcy, that Craft

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]
[2] [Affirmed in Case No. 3,317.]

"did, in contemplation of bankruptcy, give to one Samuel Jones, one of his creditors, on the 3d day of July, 1867, a confession of judgment, and, on said day, caused a judgment to be entered thereon, for the sum of $7,088, and, on said day, an execution issued thereon, to the sheriff of the city and county of New York;" also, that Craft "did, in contemplation of bankruptcy, give to one Lewis Van Doren, one of his creditors, on the 17th day of August, 1867, a confession of judgment, and, on said day, caused a judgment to be entered thereon for the sum of $548.77, and, on said day, an execution issued thereon to the sheriff of the city and county of New York; that said confessions of judgment, and each of them, were given by said Craft to said creditors, with the intent to give a preference to the said Samuel Jones and Lewis Van Doren, two of the creditors of said Asa W. Craft, and with the intent to defeat or delay the operation of the" bankruptcy act [of 1867 (14 Stat. 517)]; "that the sheriff of the city and county of New York, under and by virtue of said executions, levied on and took the property of the said Asa W. Craft, and has sold the said property to pay and satisfy the said executions in favor of said Jones and Van Doren;" and "that the proceeds of the sale of said property amounted to over the sum of $5,100, which has been paid out by said sheriff to said Samuel Jones, in part satisfaction of said judgment of said Jones against said Asa W. Craft."

On the return of the order to show cause on the petition, the debtor denied the acts of bankruptcy set forth in the petition, and demanded a trial by the court, and thereupon an order was made. under section thirty-eighth of the act, referring it to a commissioner of the circuit court to take and certify to the court all such evidence and testimony as should be offered before him on the part of the creditors or debtor in the matter, upon the issues raised by the petition and denial. The commissioner has taken and reported the testimony, and the case has been argued thereon by the counsel for the respective parties.

The testimony consists mainly of copies of the confessions of judgment named in the petition, and of the depositions of the deputy sheriff, who levied on the property of the debtor and sold it under the Jones judgment, of the attorney for Jones, who procured the Jones judgment to be confessed, of Craft, the debtor, and of Jones, the creditor. The confession of judgment in the Jones case is in the usual form, under the laws of New York, of a statement signed and sworn to by Craft, July 3d, 1867, setting forth the consideration of his debt to Jones, and its amount, $7,083, and confessing judgment in favor of Jones for that amount. On this a judgment was entered up on the same day for that amount, and $5 costs, in all $7,088, in the supreme court of New York. On the same day, an execution was issued on the judgment to the sheriff of the city and county of New York, on which he levied on sundry personal property of Craft's, which he afterward sold on the execution. The net proceeds of the sale amounted to $4,517.64, and were applied on the execution. The sheriff could find no other property of Craft's on which to levy, to make the balance of the Jones execution, or to make anything on an execution which was issued to him on the Van Doren judgment. The testimony is full to show that Craft was deeply insolvent when he confessed the Jones judgment, and, that, after the sale of his property under the Jones execution, he had no property whatever with which to pay his debts. The confession of the Jones judgment was made by Craft under pressure from Jones, the debt having been one of long standing, and frequent demands for payment of it having been made by Jones, and legal proceedings on it being threatened by Jones, and he also threatening to foreclose a chattel mortgage which he held on some of Craft's property. The proposal to confess the judgment did not emanate from Craft, but from Jones. Nothing was said between the parties about bankruptcy. Craft did not contemplate bankruptcy, and did not know there was such a law as the bankruptcy law. The debt to Jones was in all respects bona fide and fully due.

These facts make out a case fully within section thirty-nine of the act. Craft, being insolvent, suffered his property to be taken on legal process, with intent to give a preference to Jones, as a creditor. He could have prevented the taking of his property on legal process by going into voluntary bankruptcy; and, being insolvent, it was his duty to do so. By not doing so, and by confessing judgment to Jones, and allowing Jones to take his property on the execution issued on the judgment, Craft suffered his property to be taken on legal process. The result of this was to give a preference to Jones. The presumption of law is, that Craft intended to effect this result. It is for him to rebut that presumption. He has not done so. On the contrary, all the circumstances of the case corroborate it.

The views of this court as to the proper interpretation to be given to the thirty-ninth section of the act, in a case of this kind, have been fully stated in its decision in the recent case of Black v. Secor [Case No. 1,457]. The doctrine, strongly urged on the part of the debtor in this case, on the authority of the cases of Ogden v. Jackson, 1 Johns. 370, Locke v. Winning, 3 Mass. 325, and Phoenix v. Assignees of Ingraham, 5 Johns. 412, has no application to the provisions of the thirty-ninth section of the act of 1867, which are involved in the present case. It has no application to the case of an insolvent's suffering property to be taken on legal process, with intent to prefer a creditor. Those cases were all of them cases under the bankruptcy act of 1800 [2 Stat. 21]. That act required,

in order to make an act of bankruptcy, that the person should, with intent unlawfully to delay or defraud his or her creditors, willingly or fraudulently procure his goods, money, or chattels to be taken in execution. It did not require that the person should be bankrupt or insolvent, or should do the act in contemplation of bankruptcy or insolvency; and it required that there should be a procuring by the debtor, and not merely a suffering. The act of 1841 [5 Stat. 440] required, to make the act of bankruptcy, that the debtor should willingly or fraudulently procure his goods and chattels to be taken in execution. The act of 1867 requires that the debtor, being bankrupt or insolvent, or in contemplation of bankruptcy or insolvency, should procure or suffer his property to be taken on legal process, with intent to give a preference to one or more of his creditors. In Ogden v. Jackson [supra] the court held that the debtor contemplated an act of bankruptcy, thus, in effect, holding that the act of 1800 [2 Stat. 19] required that he should contemplate such an act. In Locke v. Winning [supra] the court held the same view. Chief Justice Parsons, in that case, says: "Until an act of bankruptcy committed, the bankrupt has the exclusive right to dispose of his effects at his pleasure, so that the disposition be bona fide and not fraudulent." This is true; but where the being insolvent, and suffering his property to be taken on legal process, with intent to prefer a creditor, is made the act of bankruptcy on the part of the debtor, there the disposition of the property being, with the attendant circumstances, the act of bankruptcy, he has no right so to dispose of it. In Phoenix v. Assignees of Ingraham, the court held that, though the debtor was insolvent, he did not contemplate bankruptcy, and took the view that, under the act of 1800, an insolvency was no objection to giving a preference, unless it were shown that a bankruptcy was contemplated at the time, on the ground that every man has a right to dispose of his property to whom he pleases, for an adequate consideration, and in satisfaction of his debts, until he commits an act of bankruptcy, or contemplates so to do. The court also held that, even if an act of bankruptcy were contemplated by the debtor, yet if, at the instance and on the application of the creditor, he made payment or assigned property, such payment or assignment was valid. The doctrine of these cases, and of like cases under the act of 1841, and of English cases on provisions like those in the acts of 1800 and 1841, is done away with by the express provisions of the thirty-ninth and thirty-fifth sections of the act of 1867. The cases to which I have referred were cases in reference to the validity of payments and transfers, and the present question concerns the question, what is an act of bankruptcy? But both questions are so interwoven together, in the thirty-ninth and thirty-fifth sections (the committing of an enumerated act of bankruptcy, through a transfer of property by affirmative action, procuration, or sufferance being made a ground for adjudication, as a fraud against the act, and the transfer being also made void, as being such a fraud), that the views on the one question apply very much to the other. There are, indeed, grounds for adjudication of bankruptcy specified in the act of 1867 which cannot involve any question of the transfer of property, as, for instance, departure from the state of which the person is an inhabitant, with intent to defraud creditors, and other grounds. But the general remark is true; and, as the act of 1867 is so different from the acts of 1800 and 1841, in the particulars under consideration, the decisions under the latter two acts, as to the grounds for adjudging a debtor to be a bankrupt, and for setting aside, as void, a previous transfer of property by him, have very little application to the provisions of the act of 1867 in those particulars.

It was strongly urged, on the part of the debtor, that the preference must be voluntary, and that, if there is any pressure by the creditor, it is not voluntary. This may be so as respects an affirmative act of transfer, or of procuration. But it is not so in regard to an act of sufferance. The thirty-ninth section defines four species of acts for which, when done by a person bankrupt or insolvent, or in contemplation of bankruptcy or insolvency, with intent to give a preference to one or more of his creditors, he may be put into bankruptcy. They are: (1) Making a transfer of his property; (2) giving a warrant to confess judgment; (3) procuring his property to be taken on legal process; (4) suffering his property to be taken on legal process. So far as the first, second, and third of these are concerned, the provisions are old, and existed in the former bankruptcy acts, and require affirmative voluntary action by the debtor; and the decisions under the former laws may, perhaps, apply, to the effect that pressure by a creditor deprives the acts of the debtor of their voluntary character. But the act of 1867 adds the fourth act of bankruptcy—suffering property to be taken on legal process. This was added for a purpose and with an intent. To say that there cannot be a suffering where there is pressure by a creditor, is to destroy the plain meaning of the word. To suffer or permit implies pressure and action from without. Pressure being thus an inherent element of sufferance, to say that where there is pressure there can be no sufferance, is to utter a fallacy. Where a person permits what he can prevent, he suffers or allows the thing to be done, whether he is threatened or pressed or not. A debtor who is threatened or pressed can prevent the taking of his property on legal process by going into voluntary bankruptcy. If he does not, he clearly suffers, or allows, or permits the taking. In

Gore v. Lloyd, 12 Mees. & W. 480, it was held, that giving, under pressure, a warrant of attorney to confess a judgment, under which goods were taken on execution, was not procuring, but was suffering the goods to be taken on execution; and, in Gibson v. King, 1 Car. & M. 458, it was held, that allowing a judgment to go by default was suffering goods to be taken in execution which were taken under the judgment, and was not procuring them to be so taken.

With these views nothing would remain but to decree an adjudication of bankruptcy against Craft, but for the fact that the petition of the creditors is defective in its allegations. It sufficiently avers that Craft suffered his property to be taken on legal process, with intent to give a preference to Jones, as a creditor; but it nowhere avers that Craft committed this act of sufferance when he was insolvent, or in contemplation of insolvency. The petition does not aver that he is, or was, insolvent, or contemplated insolvency. It merely avers that he did the acts alleged "in contemplation of bankruptcy." Those words, as used in the bankruptcy act of 1841, were defined by the supreme court, in Buckingham v. McLean, 13 How. [54 U. S.] 150, 167, to mean, in contemplation of committing what was made by the act an act of bankruptcy, or of voluntarily applying to be decreed a bankrupt. I think they have the same meaning as used in the thirty-ninth section of the act of 1867. In such sense, Craft did not commit this act of sufferance in contemplation of bankruptcy. It will not do to say that the act of making a transfer of property, or of procuring or suffering property to be taken on legal process, with the intent named, is an act of bankruptcy, whether the debtor is, or is not, otherwise shown to be bankrupt or insolvent, or to be contemplating bankruptcy or insolvency, on the idea that the act becomes, ipso facto, one in contemplation of bankruptcy, because, it being an act of bankruptcy, and thus being bankruptcy, the doing of it must have been in contemplation of bankruptcy. This is reasoning in a circle, and such a view would not require that the debtor should ever be insolvent or contemplate insolvency, and would virtually strike those words out of the section; for, if it were shown that the debtor had done the act named, with the intent named, the fact that he had done it in contemplation of bankruptcy would follow as an inevitable legal conclusion, and insolvency, or the contemplation of it, would never become an operative prerequisite. The debtor must be shown, aside from the mere doing of the act named, with the intent named, to have done it when bankrupt or insolvent, or in contemplation of bankruptcy or insolvency. The only averment in this regard, in the petition in this case, being that the acts done were done in contemplation of bankruptcy, and that averment not being sustained by proof that they

were done in contemplation of bankruptcy, the petition is not sustained. Yet all the facts set forth in the petition are found to be true, except the fact that the acts therein alleged to have been done were done in contemplation of bankruptcy. The additional fact is also found to be true, that those acts were done when the debtor was insolvent. The facts set forth in the petition, and such additional fact, make out a clear case for adjudging the debtor to be a bankrupt, and to have committed an act of bankruptcy before the filing of the petition. The additional fact is not one that takes the debtor by surprise. He was fully examined, without objection on his part, on the taking of the testimony, as to his debts and property, with a view to showing that he was insolvent at the time the acts set forth in the petition were done. The case, therefore, is a proper one to suspend a decision on the issue joined, and allow the petitioners to apply to amend their petition in the particular suggested. The fact that the creditors pursued the line of testimony indicated, without objection from the debtor, shows either that the parties labored under a misapprehension as to what the petition averred, or else were under the belief that the averment of contemplation of bankruptcy was the equivalent of an averment of contemplation of insolvency, and not more restricted. In either view, an amendment of the petition is proper, to prevent a failure of justice.

The decision on the petition and denial is, therefore, suspended to allow the amendment suggested.

[NOTE. On review, the circuit court affirmed the order. Case No. 3,317.]