## Case No. 1,457.

### In re BLACK et al.

[2 Ben. 196;[1] 1 Am. Law. T. Rep. Bankr. 39;
1 N. B. R. 353 (Quarto, 81).]

District Court, S. D. New York. March, 1868.

INSOLVENCY—INTENT TO GIVE PREFERENCE—SUFFERING PROPERTY TO BE TAKEN — ORDINARY COURSE OF BUSINESS—ACTION BY ASSIGNEE.

1. Where a firm, which owed debts which it was not able to pay, owed money to the brother of one of the partners, which were desirous of securing to him, and the two brothers consulted a lawyer as to how that could be done, who declined to advise them both, but sent away the partner, and then, in behalf of the creditor, brought suit against the firm to recover the debt, the summons being served on the creditor's brother alone, on which service judgment was entered by default against the firm, and execution was issued to the sheriff, who levied on the firm property, whereupon proceedings in involuntary bankruptcy were taken against the firm, and they were adjudged bankrupts without opposition, and, on the application of the judgment-creditor, the sheriff was directed to sell the property and retain the proceeds to abide the order of the court, and proof was ordered to be taken of the facts attending the entry of the judgment, and, on those proofs, the assignee in bankruptcy applied for an order directing the sheriff to pay to him the proceeds of the property in his hands: *Held*, that, on the facts, the firm was insolvent, and suffered its property to be taken on legal process, with intent to give a preference to the judgment-creditor, and that he had reasonable cause to believe that the firm was insolvent.

[Cited in Vogle v. Lathrop, Case No. 16,985; Martin v. Toof, Id. 9,167; Re Chamberlain, Id. 2,574; Re Gallinger, Id. 5,202; Beattie v. Gardner, Id. 1,195; Kohlsaat v. Hoguet, Id. 7,919. Approved in Haskell v. Ingalls, Id. 6,193. Cited in Re Lord, Id. 8,503; Re Heller, Id. 6,337; Re Craft, Id. 3,316; Re Black, Id. 1,458; Wadsworth v. Tyler, Id. 17,032; Re Wright, Id. 18,071.]

2. That, therefore, under the thirty-ninth section of the bankruptcy act [of 1867] the firm had committed an act of bankruptcy, and the assignee in bankruptcy was entitled to recover back the property so taken.

[Cited in Martin v. Toof, Case No. 9,167; Beattie v. Gardner, Id. 1,195; Kohlsaat v. Hoguet, Id. 7,919. Approved in Haskell v. Ingalls, Id. 6,193. Applied in Re Lord, Id. 8,503. Cited in Re Craft, Id. 3,316; Re Black, Id. 1,458; Wadsworth v. Tyler, Id. 17,032; Re Wright, Id. 18,071.]

3. That the word "insolvency," as used in that section, has a different meaning from the word "bankruptcy," as used in the second section of the bankruptcy act of 1841, and means a simple inability to pay, as debts become payable.

[Cited in Re Walton, Cases Nos. 17,128 and 17,130; Re Kingsbury, Id. 7,816; Graham v. Stark, Id. 5,676; Rison v. Knapp, Id. 11,861; Martin v. Toof, Id. 9,167; Hall v. Wager, Id. 5.951; U. S. v. Pusey, Id. 16,098; Re Craft, Id. 3,316; Re Hanibel, Id. 6,023.]

4. That, if the act of a bankrupt does in fact give a preference to a creditor, it is competent to infer an intent on his part to give such preference, unless he prove to the contrary.

[Cited in Martin v. Toof, Case No. 9,167; Re Seeley, Id. 12,628.]

5. That, on the facts, there was, also, a transfer of property to the creditor, in violation of the thirty-fifth section of the act.

[Cited in Tuttle v. Truax, Case No. 14,277; Haskell v. Ingalls, Id. 6,193; Wadsworth v. Tyler, Id. 17,032; Re Wright, Id. 18,071.]

6. That, as the creditor had submitted himself to the jurisdiction of the court, there was no need of an action by the assignee to recover the property, but the court would order the sheriff to pay over the proceeds to him.

[7. Cited in Re Dunkle, Case No. 4,160, as to the distinction between procuring and suffering property to be taken on legal process.]

[In bankruptcy. In the matter of James Black and William Secor, involuntary bankrupts. Decree directing the sheriff to pay over to the assignee in bankruptcy the proceeds of a sale on execution against the bankrupts.]

Charles H. Smith, for assignee in bankruptcy.

H. P. Townsend, for Thomas P. Secor.

Brown, Hall & Vanderpoel, for sheriff.

BLATCHFORD, District Judge. The petition, in this case, was one in involuntary bankruptcy, and was filed on the 22d of June, 1867. The acts of bankruptcy alleged in the petition were, that Secor, acting for the firm of Black & Secor, composed of the debtors, procured and suffered the property of the firm to be taken on legal process in favor of Thomas P. Secor, on a judgment entered in the supreme court of New York, June 5th, 1867, for $2,879.78, in favor of Thomas P. Secor, against the debtors, and procured and suffered said judgment to be entered, and an execution to be issued thereon to the sheriff of the city and county of New York, against the property of the debtors, and such property, consisting of goods

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

and chattels, to be taken by the sheriff by virtue thereof; and that Secor procured and suffered said property to be so taken, with intent to give a preference to Thomas P. Secor, as a creditor of the firm, and with intent to defeat and delay the operation of the bankruptcy act; and that the debt on which the judgment was entered was not a bona fide debt; and that the judgment was so procured and suffered with intent to hinder, delay, and defraud the creditors of the firm; and that the firm was wholly insolvent, and had been so for more than a year then last past, and was so at the time of the commission of the alleged acts of bankruptcy. On the 1st of July, 1867, on proof of due personal service on the debtors of a copy of the petition and of an order to show cause, no opposition being made, an order was made by the court adjudging the debtors to be bankrupts, according to form No. 58.

On the filing of the petition, on the 22d of June, 1867, an order was made by the court, under section forty, that an injunction issue restraining the debtors and all other persons, and especially the sheriff of the city and county of New York, from transferring or disposing of, or interfering with, the property of the debtors. The injunction was issued and served.

On the 25th of October, 1867, an order was made by the court, on the application of Thomas P. Secor and of the sheriff, referring it to the register in charge of the case, to take proof of the facts as to whether the bankrupts, or either of them, procured or suffered the judgment referred to to be entered, and execution to be levied, with intent to give a preference to Thomas P. Secor, or any other person, or with intent to defeat the operation of the bankruptcy act, and whether Thomas P. Secor, or any person for whose benefit, in whole or in part, the judgment was entered, had reasonable cause to believe that a fraud on the act was intended, or that the debtors were insolvent, and also whether the judgment, execution, and levy were valid as against the assignee in bankruptcy, and to report the proofs so taken. The order also provided, that the sheriff be permitted to sell the goods levied on by him, and that he hold the net proceeds subject to the further order of this court, to be made on the application either of the assignee or of Thomas P. Secor, on notice to the other party and to the sheriff.

The register has taken the testimony and reported it to the court. The net proceeds of sale in the hands of the sheriff are $1,957.17, and the assignee in bankruptcy now applies to the court, on the proofs taken before the register, and on notice to Thomas P. Secor and to the sheriff, for an order that the proceeds of sale be paid over to the assignee in bankruptcy.

It appears, from the proofs, that the judgment was obtained against the bankrupts as partners and joint debtors, on service of process on Secor alone. Such service was made on the 15th of May, 1867, and the judgment was entered by default, on the 5th of June, 1867, which was the earliest day on which it could be entered in due course of law. Black knew nothing of the suit or of the judgment until after the judgment was entered. Thomas P. Secor was represented by counsel on the taking of testimony before the register. The witnesses examined were Mr. Townsend (the attorney for Thomas P. Secor in obtaining the judgment), Mr. Dewhurst (a creditor of the firm), and James Black (one of the bankrupts). Neither Thomas P. Secor nor William Secor was examined. The amount of assets of the firm which has come to the hands of the assignee in bankruptcy is less than $100, the amount of the individual assets of Black which has come to his hands is less than $500, and no individual assets of Secor have come to his hands.

The testimony shows that, shortly before the suit was brought, Thomas P. Secor and William Secor came together to Mr. Townsend, the attorney; that Thomas then, in the presence of William, said that he had come to consult Mr. Townsend in regard to a claim which he had against Black & Secor, and that it was due, and he wished to get his pay or be secured, and was willing to give time, but felt that he ought to be secured; that Thomas then asked Mr. Townsend how he could be secured, and Mr. Townsend told him there was great difficulty in doing it; that William then told Mr. Townsend that the affairs of the firm were sound, and they would be able to pay their creditors, and said he was willing to secure Thomas in any way it could be done, and that his debt should be paid; that, in reply to an inquiry by both of the parties as to how William could give security, Mr. Townsend told them that he knew of no way in which a security could be given that would be good to Thomas; that Mr. Townsend then told William that he wanted nothing to do with him, and did not wish to advise with him in the matter, and that, if he was to act for Thomas, he could not act for him; that Thomas then said he wanted Mr. Townsend to act for him; that Mr. Townsend then desired William to leave the office, and told him that he could not have anything to do with him or his business; that William withdrew and Thomas remained; that Mr. Townsend then told Thomas that he knew of only one course to pursue in the matter, and that was to sue the firm, and to proceed with all diligence in doing it; that he wanted nothing from the firm, but that they would take their own course, and collect the debt, if possible, according to process of law; that Thomas then asked Mr. Townsend what he would advise him to do, and Mr. Townsend told him he would advise him to sue as soon as possible; and that Mr. Townsend then took

from Thomas a statement of the claim, and drew the summons and complaint. During the conversation referred to, Thomas suggested that he might have a confession of judgment, and Mr. Townsend told him that he could not. William said, in the conversation, that he was anxious to secure Thomas' debt. William and Thomas are brothers. Throughout the interview, William maintained that the firm could pay everything, if they had time.

The testimony of Black is express to the point, that the firm was insolvent at the time the judgment was obtained and the levy was made, and there appear to have been a series of efforts and propositions in regard to securing Thomas' debt, in which both of the bankrupts and Thomas were engaged, prior to the bringing of the suit, none of which resulted in anything. The plan of bringing the suit was then adopted, under the circumstances detailed, all knowledge of it being kept from Black. The evidence is also entirely satisfactory, that Thomas had reasonable cause to believe the firm to be insolvent at the time the judgment was recovered and the levy was made. Upon the question of insolvency and of Thomas' knowledge of it, the absence of any testimony from either Thomas or William is a very strong circumstance unfavorable to the bona fides of the transaction.

The thirty-ninth section of the bankruptcy act provides that, if any person residing within the jurisdiction of the United States, owing debts, provable under the act, exceeding the amount of three hundred dollars, shall, after the passage of the act, being bankrupt or insolvent, or in contemplation of bankruptcy or insolvency, make any transfer of property, or procure or suffer his property to be taken on legal process, with intent to give a preference to one or more of his creditors, he shall be deemed to have committed an act of bankruptcy, and, subject to the conditions thereinafter prescribed, shall be adjudged a bankrupt. The section then goes on to provide, that, if such person shall be adjudged a bankrupt, the assignee may recover back the property so transferred contrary to the act, provided the person receiving such conveyance had reasonable cause to believe that the debtor was insolvent. These provisions of the thirty-ninth section, as applied to the facts of the present case, are simply to the effect, that, if William Secor, when the firm of Black & Secor was insolvent, or in contemplation of its insolvency, made a transfer of the property of Black & Secor, or suffered it to be taken on legal process, with intent to give a preference to Thomas P. Secor, as a creditor of the firm, the assignee in bankruptcy of the members of the firm (they having been adjudged bankrupt as such members, and the firm being thus adjudged bankrupt) may recover back the property so transferred contrary to the act, provided Thomas P. Secor

had reasonable cause to believe that the firm was insolvent.

Now, it clearly appears, from the evidence, (1.) That the firm of Black & Secor was insolvent; (2.) That William Secor, a member of the firm, suffered the property of the firm to be taken on legal process; (3.) That he did so with intent to give a preference to Thomas P. Secor, as a creditor of the firm; (4.) That Thomas P. Secor had reasonable cause to believe that the firm was insolvent.

(1.) In regard to the question of insolvency, the provisions of the bankruptcy act of 1841 were very different from those which are found in the act of 1867. The second section of the act of 1841 declared void all transfers of property made by the bankrupt in contemplation of bankruptcy, and for the purpose of giving a preference to any person over general creditors, and all transfers of property made by the bankrupt in contemplation of bankruptcy, to any person not a bona fide creditor, or a purchaser for a valuable consideration without notice, and authorized the assignee in bankruptcy to recover the property transferred; but it expressly provided, that all dealings and transactions by and with any bankrupt bona fide, made and entered into more than two months before the filing of the petition in bankruptcy, should not be invalidated or affected by the act, provided that the other party to any such dealings or transactions had no notice of a prior act of bankruptcy, or of the intention of the bankrupt to take the benefit of the act. It was decided by the supreme court, in Buckingham v. McLean, 13 How. [54 U. S.] 150, 167, that the words "contemplation of bankruptcy," in the second section of the act of 1841, did not mean contemplation of insolvency—of a simple inability to pay, as debts should become payable, whereby the business of the debtor would be broken up—but meant that the debtor must have contemplated the commission of what was declared by the act to be an act of bankruptcy, or must have contemplated an application by himself to be decreed a bankrupt. The view of the court was, that, under the act of 1841, something more than the insolvency of the debtor was required to render void a security given to a bona fide creditor more than two months before the filing of the petition, and notice to the creditor of something more than such insolvency; that the word "bankruptcy," as used in the act, meant a particular legal status, to be ascertained and declared by a judicial decree; that a person might contemplate insolvency and the breaking up of his business, and yet not contemplate bankruptcy; and that, as the contemplation of insolvency was not in fact the contemplation of bankruptcy, the phrase, "contemplation of bankruptcy," did not include the contemplation of mere insolvency. In these particulars, the thirty-ninth section of the act of 1867 differs widely, and with a manifest purpose, from the act of 1841. The words of the

thirty-ninth section, in defining the act of bankruptcy, are "bankrupt or insolvent, or in contemplation of bankruptcy or insolvency." If the debtor is in any one of those conditions when he makes the transfer of his property, or procures or suffers his property to be taken on legal process, with intent to give a preference to a creditor, he commits an act of bankruptcy thereby, and is liable therefor to be adjudged a bankrupt; and the assignee may recover back the property so transferred contrary to the act, provided the person receiving the conveyance had reasonable cause to believe that the debtor was insolvent. The words "insolvent" and "insolvency," as used in the thirty-ninth section and elsewhere in the act of 1867, are not synonymous with the words "bankrupt"· and "bankruptcy," if the latter words have, in that act, the meaning which the supreme court, in Buckingham v. McLean, affixed to them as used in the act of 1841. The former words, in the view of such meaning of the latter words, mean something different, and something less restricted. The word "insolvency," as used in the act of 1867, means what the court, in Buckingham v. McLean, held the word "bankruptcy" did not mean, and the word "insolvency" did mean—a simple inability to pay, as debts shall become payable, whereby the business of the debtor will be broken up, without any contemplation of the commission of an act for which he can be put into involuntary bankruptcy, and without any contemplation of an application by himself to be decreed a bankrupt. But, if the words "bankrupt" and "bankruptcy," as used in the thirty-ninth section of the act of 1867, do not mean what they meant in the act of 1841, as interpreted by the supreme court in Buckingham v. McLean, but mean, in view of the relationship in which they are placed, in that section, to the words "insolvent" and "insolvency"—"bankrupt or insolvent, or in contemplation of bankruptcy or insolvency" —the same thing as the words "insolvent" and "insolvency," they must have the meaning which, in Buckingham v. McLean, the supreme court discarded as belonging to them, and the meaning which that court in that case assigned to the words "insolvent" and "insolvency." In either view, the decisions of the courts under the act of 1841, as to what transfers of property made by a bankrupt before the commencement of proceedings in bankruptcy were void under the second section of that act, and the decisions of the English courts as to the meaning of the words, "bankrupt" and "contemplation of bankruptcy," have very little, if any, application to the act of 1867.

(2.) So, also, in regard to the question of suffering property to be taken on legal process, the language of the thirty-ninth section is, "procure or suffer his property to be taken on legal process." There was no such language in the act of 1841. It was, by the first section of that act, made an act of bankruptcy for a person to willingly or fraudulently procure his goods to be taken in execution. The word "suffer," in this connection, was not used in the act of 1841. There is a clearly recognized legal distinction between "procuring" and "suffering." The act of 6 Geo. IV. c. 16, § 3, provided, that if any trader should suffer himself to be arrested for any debt not due, or suffer himself to be outlawed, or procure himself to be arrested, or his goods, money, or chattels to be attached, sequestered, or taken in execution, he might be brought into bankruptcy. In Gibson v. King, 1 Car. & M. 458, a creditor had brought an action against the bankrupt for a debt, and judgment had been suffered to go by default, and an execution had been issued on it, on which the bankrupt's goods had been taken, and the question arose, whether suffering the judgment to go by default in the action, and suffering the goods to be taken on the execution on the judgment, was procuring the goods to be taken in execution, within the statute. The court held, that the bankrupt had suffered the goods to be taken in execution, but had not procured them to be so taken. The same view of the distinction between the two words in the English act was taken in Gore v. Lloyd, 12 Mees. & W. 463. The distinction there maintained by Baron Alderson was, that the bankrupt procured his goods to be taken in execution, when the initiation of the proceeding came from him, when he was the person who began to procure, when he caused the thing to be done, in the ordinary sense of the word; but that the signing reluctantly, and under strong pressure from a creditor, of a warrant to confess a judgment, under a stipulation that the warrant should not be unnecessarily put in force, was suffering, and not procuring, goods to be taken in execution, which were taken on an execution issued on a judgment entered up on the warrant. The English and other decisions as to pressure by a creditor, and as to what it is to procure, have no application to the question of suffering. Denny v. Dana, 2 Cush. 160, 170.

(3.) As to the question of intent on the part of the debtor to give a preference to the creditor. The intent to prefer is essential; but every person is to be presumed to intend the natural and probable consequences of his own acts, and, if such acts do, in fact, give a preference, it is competent to infer the intent. Denny v. Dana, 2 Cush. 160, 172; Beals v. Clark, 13 Gray, 18, 21.

Where the act which is made the act of bankruptcy is a passive act, such as that of suffering property to be taken on legal process, when the debtor is insolvent or in contemplation of insolvency, with intent to give a preference to a creditor, if the natural and probable consequence of the act of sufferance is to give the preference to the creditor, it will be inferred that the debtor had such intent, unless he shows the contrary; and

the burden will be upon him to show the contrary. In the present case, the act of suffering Thomas P. Secor, the creditor, to obtain his judgment, and take the property of the firm on legal process thereunder, could have no other effect, if not thwarted, than to give to Thomas P. Secor a preference, as such creditor, over other creditors of the firm, and, therefore, William Secor would be held to have intended to give such preference. But, in addition to that, the evidence is such as to show affirmatively that he intended that his suffering the judgment to be recovered should effect the preference. He could have prevented the preference, by filing his voluntary petition in bankruptcy, for an adjudication of bankruptcy against the firm, and bringing in his copartner. Being able to prevent the preference, he must, not having prevented it, be held to have suffered it, within the meaning of the act.

(4.) As to the question whether Thomas P. Secor had reasonable cause to believe that the firm was insolvent, the evidence leaves no fair ground for doubt on the subject.

The same results that follow from the application of the provisions of the thirty-ninth section of the act to this case, follow also under the thirty-fifth section. The two sections are in pari materia, and must be construed together. There is, however, no conflict between them, and they are of the same purport and tenor. Under the thirty-fifth section, if William Secor, his firm being insolvent, did, within four months before the filing of the petition against his firm, make any transfer of any part of the property of the firm to Thomas P. Secor, he being a creditor of the firm, with a view to give a preference to him, and if Thomas P. Secor, being the person receiving the transfer, or to be benefited by it, had reasonable cause to believe the firm to be insolvent, and that the transfer was made in fraud of the provisions of the act, the transfer was void, and the assignee may recover the property, or its value, from Thomas P. Secor. The thirty-fifth section also provides, that, if the transfer was not made in the usual, or ordinary, course of business of the debtor, the fact shall be prima facie evidence of fraud. The act of suffering the creditor to take the property of the firm on legal process, the firm being insolvent, when such taking could have been prevented by an application in voluntary bankruptcy, was a fraud on the provisions of the act, and was a transfer of the property of the firm to the creditor, within the meaning of the thirty-fifth section, and must be held to have been a transfer made by the debtors, and with a view to give a preference to the creditor. The creditor was to be benefited by the transfer, and had reasonable cause to believe the firm to be insolvent, and that the transfer was made in fraud of the provisions of the act. The transfer was not made in the usual, or ordinary, course of business of the debtors. Therefore, it was void, and the assignee in bankruptcy is entitled to recover from Thomas P. Secor the property transferred, or its value. There is no need of a new action for such purpose. Thomas P. Secor has submitted himself to the jurisdiction of this court in the premises. It was on his application that the order was made, referring the matter to take testimony as to the facts involved, and directing the proceeds of the property transferred to be held by the sheriff, subject to the further order of this court, to be made on the application of either party, on notice to the other.

The act of 1867 is much more extensive and far-reaching, in its provisions respecting transactions by a debtor with his creditors, than the act of 1841 was. In respect to the act of 1841, the supreme court, in Shawhan v. Wherritt, 7 How. [48 U. S.] 627, 644, said: "The policy and aim of bankrupt laws are, to compel an equal distribution of the assets of the bankrupt among all his creditors. Hence, when a merchant or trader, by any of these tests of insolvency," that is, the acts which are made, by the statute, acts of bankruptcy, "has shown his inability to meet his engagements, one creditor cannot, by collusion with him, or by a race of diligence, obtain a preference, to the injury of others. Such conduct is considered a fraud on the act, whose aim is to divide the assets equally, and, therefore, equitably." These doctrines, thus held to be applicable to the act of 1841, are much more applicable to the act of 1867. And congress, in view of the provisions of the act of 1841, and of the decisions of the supreme court under it, in regard to the meaning of the words "bankruptcy" and "contemplation of bankruptcy," and of the decisions of the courts in the United States and in England in regard to the meaning of the words "procure" and "suffer," and in regard to the effect of pressure or suit by a creditor upon the question as to whether the debtor procures to be done the act which secures the preference to the creditor, must be regarded as having intended, by the use of the words "insolvent," and "contemplation of insolvency," and "suffer," in the connection in which they are found in the act of 1867, to strike at the root of all preferences obtained by a creditor, where his debtor is insolvent, or in contemplation of insolvency, by the taking of the debtor's property on legal process, whether the taking be by an act of procurement, or an act of sufferance, on the part of the debtor, where there is an intent on the part of the debtor to give such preference, and the creditor has reasonable cause to believe that the debtor is insolvent.

An order must be entered, that the sheriff pay over to the assignee in bankruptcy the net proceeds of the sale of the property in question.

[NOTE. For subsequent proceedings to determine the validity of certain executions and levies as against the assignee in bankruptcy, see the following case, Case No. 1,458.]