WOLFINGER (ROSS v.). See Case No. 12,081.

## Case No. 17,930.

### In re WOLFSKILL.

[5 Sawy. 385.] [1]

District Court, D. California. Jan. 21, 1879.

DISCHARGE OF BANKRUPT—EFFECT OF PREFERENCE.

Where the bankrupt had made a conveyance constituting a preference fourteen months before the commencement of the proceedings, held, that the discharge should be granted notwithstanding. The words "in contemplation of becoming bankrupt" considered.

[In the matter of Berry Wolfskill, a bankrupt.]

James T. Hoyt, for bankrupt.

W. V. Wells and John C. Hall, for creditors.

HOFFMAN, District Judge. The discharge of Roberts, one of the bankrupts, is opposed on the ground that being insolvent, and in contemplation of becoming bankrupt, he

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

made a payment to one of his creditors for the purpose of preferring him over his other creditors, and of preventing the money so paid from coming into the hands of his assignee in bankruptcy, and being distributed under the act. The testimony shows that the payment made was of an honest debt, and although it amounted to a preference, yet it was not made in contemplation of being adjudged a bankrupt; for the present proceedings were not commenced until fourteen months afterwards. It is contended that the words "becoming a bankrupt" mean committing an act of bankruptcy for which the debtor might be adjudged, and the words "in contemplation of becoming bankrupt" mean, in contemplation of committing an act of bankruptcy. In the bankruptcy act of 1841 [5 Stat. 440] the expression used is "in contemplation of bankruptcy."

In Everett v. Stone [Case No. 4,577], Mr. Justice Story explains and defines their meaning. He held that they do "not point merely to cases where the bankrupts contemplate a formal adjudication in bankruptcy, either in voluntary or involuntary proceedings, but they extend to cases where the bankrupts contemplate a complete and total stoppage of their business and trade. In short, contemplation of bankruptcy means a contemplation of becoming a broken-up and ruined trader, according to the original signification of the term—a person whose table or counter of business is broken up—bancus ruptus."

In Buckingham v. McLean, 13 How. [54 U. S.] 168, the supreme court gave for the first time a construction to the phrase. Mr. Justice Curtis delivering the unanimous opinion of the court says, after remarking that at common law conveyances by a debtor to bona fide creditors are valid, even though intended as preferences: "This common law right it was the object of the second section of the act to restrain, but at the same time in so guarded a way as not to interfere with transactions consistent with a reasonable accomplishment of the object of the act. To give to these words 'contemplation of bankruptcy' a broad scope, and somewhat loose meaning, would not be in furtherance of the general object for which they were introduced. The word bankruptcy occurs many times in this act. It is entitled an act to establish a uniform system of bankruptcy, and the word is manifestly used in other parts of the act to describe a particular legal status to be ascertained and declared by a judicial decree. It cannot be easily admitted that this precise and definite term is used in this clause to signify something quite different. It is certainly true in point of fact that even a merchant may contemplate insolvency, and the breaking up of his business, and yet not contemplate bankruptcy. He may confidently believe that his personal character, and the state of his affairs, and the disposition of his creditors are such that

when they shall have examined into his condition, they will extend the time of payment of their debts, and enable him to resume his business. A person not a merchant, banker, etc., and consequently not liable to be proceeded against and made a bankrupt, though insolvent, may have come to a determination that he will not petition. The contemplation of these states not being in fact the contemplation of the other, to say that both were included in a term which describes only one of them would be a departure from sound principles of legal interpretation."

The construction given to the expression by the court was that to render the security void, the debtor must have contemplated "an act of bankruptcy, or an application by himself to be decreed a bankrupt." In the enumeration in the act of 1841 of the cases in which a debtor may be adjudged, the giving of a preference is not mentioned. But by the act of 1867 [14 Stat. 517] a preference given in contemplation of bankruptcy or insolvency is declared to be an act of bankruptcy (section 30); and under section 35 the transaction may be avoided by the assignee, if the proceedings in bankruptcy be commenced within the prescribed period, and the creditor had the reasonable cause for belief and the knowledge mentioned in the section. It has, therefore, been held that the words in contemplation of becoming bankrupt mean in contemplation of committing an act of bankruptcy, and that inasmuch as a preference by an insolvent, or by a person in contemplation of insolvency, is an act of bankruptcy, such a preference must be deemed to have been given "in contemplation of becoming bankrupt."

In Re Goldschmidt [Case No. 5,520], Mr. Justice Blatchford refused a discharge to a bankrupt who had made an assignment of all his property for the equal benefit of all his creditors more than ten months before the commencement of the bankruptcy proceedings, holding that the assignment was made with intent to hinder and delay his creditors, and to prevent his property from coming into the hands of the assignee. But in Re Freeman [Id. 5,082], the same learned judge held that a transfer of property alleged to be fraudulent made nine months before the filing of the petition, was not fraudulent within the meaning of the act.

The same construction of the clause in question appears to have been adopted by Bradford, J., in Re Pierson [Case No. 11,153]. And in Re Jones [Id. 7,446], Mr. Justice Lowell held that preferences given without regard to the bankruptcy, and more than six months before the filing of the petition, could not be set up in opposition to a discharge. This case is a strong one, for it was alleged that a previous proceeding in the state of Maine had been dismissed "for the purpose of getting rid of the objection that the preferences had been given within four months of the petition in that case." See, also, In re

Locke [Id. 8,439], and In re Burgess [Id. 2,-153].

In the case of In re Lutgens [unreported], this court followed the ruling of Mr. Justice Blatchford in Re Goldschmidt [supra], but the point was not very carefully considered as a clearly fraudulent conveyance, made with intent to hinder, delay and defraud creditors appeared to have been made. In Re Kafore [unreported], Mr. Justice Wallace held that a general assignment made in good faith, and without preferences, was an act of bankruptcy, and would defeat a discharge, notwithstanding that it was made more than six months before the filing of the petition.

In Re Warner [Case No. 17,177], to which I have been referred, the point under consideration did not arise as the preferences were given about a month before the filing of the petition. In Re Cretiew [Id. 3,390], the ground of objection was actual fraud. It will be seen from the foregoing that the authorities are conflicting.

I confess that I am not wholly satisfied with the construction of the clause in question, which treats every technical preference upon which an adjudication might be made as given "in contemplation of becoming bankrupt," because, being an act of bankruptcy, it renders the debtor liable to be adjudged a bankrupt.

Were it not for the fact this construction seems to have been generally adopted, I should have been disposed to hold that the expression "in contemplation of becoming bankrupt" was intended to mean the contemplation of becoming a bankrupt, i. e., of being so adjudged, as the observations of the supreme court above cited seem to imply, or else the contemplation of the condition of affairs described by Judge Story in Everett v. Stone [supra], viz., the contemplation of a complete and total stoppage of the debtor's business and trade, and of becoming a broken-up and ruined trader.

This construction would preserve the distinction between a "contemplation of becoming bankrupt," as mentioned in section 29, and the contemplation of bankruptcy, or insolvency, as mentioned in section 39. But with regard to the second point, the weight of authority seems to be that to constitute "the fraudulent preference under this act," mentioned in section 29, it must have been such as are mentioned in section 35 and section 39, and have been given within, at most, six months preceding the filing of the petition. See In re Harper [Case No. 6,085].

I adopt this construction not without grave misgivings. It is open to serious objections. But it avoids the seeming incongruity of refusing a discharge on account of a preference which constituted an act of bankruptcy, when that preference could not, at the time of the commencement of the proceedings, have been the basis of an adjudication. If, after the expiration of six months, an act of bankruptcy committed by the debtor can

no longer be alleged against him in proceedings in invitum, it would seem reasonable that a similar prescription should run in his favor, when the commission of the same act is urged as an objection to his discharge.

On the whole, though with considerable hesitation, I decide to grant the discharge.