## In re HIRSCH.

### (District Court, W. D. Tennessee.   August 16, 1899.)

### No. 1,773.

1. BANKRUPTCY—DISCHARGE—SPECIFICATIONS IN OPPOSITION.

Specifications in opposition to a bankrupt's application for discharge must be as specific as a criminal information or indictment, so as to notify the bankrupt of the particular acts or conduct on his part on which the opposition is based; and to this end they must distinctly allege the facts relied on, and not mere conclusions of fact.

2. SAME—SUFFICIENCY OF SPECIFICATIONS.

In specifications in opposition to the discharge of a bankrupt, an allegation that he has "not offered to surrender all his property for the benefit of his creditors," and that he is "withholding property from his creditors," is not sufficient as an attempt to charge the offense of knowingly and fraudulently concealing property from his trustee, or that of making a false oath in a proceeding in bankruptcy.

3. SAME—KEEPING BOOKS.

It is no ground of opposition to the discharge of a bankrupt that he failed to keep proper books of account in his business, or destroyed his books, at a time prior to the enactment of the bankruptcy law; for, no bankruptcy law being in existence, such acts or conduct could not have been "in contemplation of bankruptcy," within the meaning of section 14 of the act (30 Stat. 550).

4. SAME—CONTEMPLATION OF BANKRUPTCY.

The phrase "in contemplation of bankruptcy," as used in the act of 1898, means contemplation on the part of a debtor of filing his voluntary petition in bankruptcy, or of involuntary proceedings being taken against him by his creditors for some act which the statute makes an act of bankruptcy. It does not mean contemplation merely of a state of insolvency.

5. SAME.

A debtor cannot be said to be "in contemplation of bankruptcy" at a time when no bankruptcy law is in existence, although a bill for a bankruptcy statute is then pending before congress, and the debtor expects to take the benefit of it if it should become a law.

6. SAME—DESTROYING OR CONCEALING BOOKS.

Where a debtor has kept books of account or records of his business carried on before the enactment of the bankruptcy law, their destruction or concealment after the passage of the act will be ground for refusing his discharge in bankruptcy, if done with the fraudulent intent denounced by the statute.

7. SAME—EVIDENCE.

A bankrupt, on his examination before the referee, admitted that he had certain books of account relating to a business which he had formerly carried on, and in which he had failed and made a general assignment, and promised to produce such books. As an explanation of his failure to keep this promise, he said that he could not now find the books; that at the time of his failure, thinking they were of no value, and having no place to keep them, he had left them lying in the store, and supposed they had been lost or mislaid in some way unknown to him. *Held,* no sufficient evidence of a fraudulent destruction or concealment of the books to warrant the court in refusing to discharge the bankrupt.

8. SAME—CONCEALING PROPERTY.

The mere fact that a bankrupt has not listed certain property on his schedule is no ground for refusing his discharge. It must further appear that the omission of property from the schedule was of such a character as to make his oath to the schedule a false oath, or of such a character as to amount to a knowing and fraudulent concealment of property from his trustee.

**9. SAME.**

Corporate stock standing in the name of a bankrupt should be included in his schedule, although hypothecated for its full value; but if he omits to list it, not with any fraudulent intention, but under the honest belief that, being so pledged, it is no longer his, or is not worth including, this is no reason for refusing his discharge.

**10. SAME—EVIDENCE.**

A merchant having failed in business, his brother-in-law furnished capital to re-establish him. A corporation was formed, and all the stock was taken in the name of the brother-in-law and other relatives of the merchant, with the expectation that the money should be repaid to them when the business justified it. The merchant conducted the business as manager, and received a salary; no dividends being paid, although the business was profitable. There was no evidence to show that the capital was really furnished by the merchant himself, or received as a gift or loan from his relatives, or that the transaction was fraudulent or simulated. The merchant became bankrupt, and, having failed to list the stock of goods belonging to said corporation in his schedule, *held*, that there was no such fraudulent concealment of property from his trustee as would forfeit his right to a discharge.

**11. SAME.**

The right of creditors to oppose a bankrupt's discharge on the ground of an alleged fraudulent transaction does not depend on their having taken any legal proceedings, through a trustee or otherwise, to recover the property affected; but if the evidence, on the bankrupt's application for discharge, is *doubtful and conflicting, the fact that creditors have made no such effort* may be taken into consideration, and, in an evenly-balanced condition of the proof, will warrant a decision in favor of the bankrupt.

**12. SAME—GRANTING DISCHARGE—TIME FOR APPEAL.**

Where specifications in opposition to the discharge of a bankrupt have been overruled, and the discharge ordered, the bankrupt's certificate of discharge will not issue until the expiration of 10 days after the order, or until the expiration of any extension of the time allowed to creditors to appeal from such order.

In Bankruptcy. On application of bankrupt for discharge.

Hunsdon Carey and John H. Watkins, for opposing creditors.
T. K. Riddick, for bankrupt.

HAMMOND, J. The first specification, as originally filed, in opposition to the bankrupt's discharge, set out that he "had not offered to surrender all his property for the benefit of his creditors; that he is now the real owner of the stock of goods, business, and property of the Jacob Hirsch Company, a corporation located and doing business at Somerville, Tennessee; and that he is now withholding that property from his creditors." The second specification charged that, with the fraudulent intent to conceal his true financial condition, and in contemplation of bankruptcy, he destroyed, concealed, or failed to keep books of account or records from which his true condition might be ascertained, in this: that he has destroyed or concealed the book where he kept the account of the cash taken in by him in his business at Somerville, Tenn., during the year 1896, and prior thereto, from which the original entries of his business were copied in the ledger. A motion to strike out these specifications, as insufficient, was granted upon the ground that specifications in opposition to a discharge must distinctly aver the facts of the case, and not mere conclusions of fact. Substantially, the plead-

ing must be as specific as a criminal information or indictment; the purpose being that the bankrupt shall have notice of that particular conduct of his which is challenged as an objection to his discharge. This is particularly so under the act of 1898, because by the fourteenth section it is provided that most of the grounds of the opposition to the discharge shall be based upon some offense committed by the bankrupt which is made punishable with imprisonment by the act itself. The other grounds of opposition mentioned in the fourteenth section need not be criminal in their nature, necessarily; but they likewise fall within the ordinary rule that, where the language of a statute does not of itself serve the purpose of giving notice to the offender of the particular conduct which is charged against him as an offense, the pleader must aver the facts with sufficient fullness to accomplish that object. The specifications, as originally drawn, do not do this.

It was also objected to the specifications, in their original form, that the alleged destruction of the books, or failure to keep them, had not been charged to have occurred since the passage of the act of 1898, but, upon the contrary, that it appeared upon the face of the specifications that they related to the business done in 1896. This objection is probably covered by the one just disposed of, but it is not improper to say that in the statute itself there is no indication of any intention to withhold a discharge because of any destruction or failure to keep books occurring before the passage of the act. Undoubtedly congress might have extended the grounds of opposition in that manner, but, by the statute itself, the act complained of "must have been in contemplation of bankruptcy." It was ruled in Re Holman, 92 Fed. 512, that this phrase necessarily implies that it must have been done after the passage of the bankruptcy statute, since, before that time, there could have been no bankruptcy in contemplation, and it seems to me that there is no answer to that proposition; but of this more will be said presently, in considering the amended specifications. Indeed, it has been argued for the bankrupt that this provision of the fourteenth section cannot, in the nature of the case, apply to any books or records of a business carried on prior to the passage of the bankruptcy statute. But this is not, in my judgment, altogether sound, and I wish to guard against any misunderstanding on that point of the ruling that has been made. Whatever may be said of "keeping" books of account or records, in respect of that, certainly if one has kept records of his business carried on before the passage of the bankruptcy statute, and these were destroyed or concealed after the passage of the act, the offense would fall within the provisions of the second class of offenses denounced, as a cause for withholding a discharge, by the fourteenth section.

Another reason urged for striking out the first specification is that it does not charge any ground for denying a discharge which is recognized by the fourteenth section of the statute. The act of 1898 nowhere requires the bankrupt to "offer to surrender his property," nor does it provide any penalty for "withholding the same from his creditors." If we turn to section 29, which designates the offenses punishable by imprisonment under the statute, we find that what is

described as an offense is to "knowingly and fraudulently conceal from his trustee any property belonging to his estate in bankruptcy." Also, it is an offense punishable by imprisonment to make any false oath in relation to any proceeding in bankruptcy. If a bankrupt willfully leaves off any property which he should disclose by his schedules, he certainly makes a false oath to the same, and his discharge may be denied on that ground. Again, if he knowingly and fraudulently conceals his property, no matter how, he cannot be discharged, but the fact that he left the property off the schedule is only an evidence in the one case of concealment, and in the other of the falsity of the oath; but as the statute nowhere denounces as a ground for denying the discharge the mere failure to put the property upon the schedules or to surrender it to the trustee, and inasmuch as these accusations are penal in their character, as before stated, nothing can be implied from or based upon such language in a specification opposing a discharge. There must be a distinct averment of the facts bringing the case within the specific denunciations of the statute, and nothing less will do. Failure to schedule or surrender property to the trustee is not per se, or ipso facto, to "knowingly and fraudulently conceal" it.

The amended specifications upon which issues have been taken now present the following grounds of opposition to the discharge: First. That the bankrupt knowingly and fraudulently concealed from the referee, from his creditors, and from the trustee, while a bankrupt, certain property; that is to say, that he was, on the day on which he filed his petition in bankruptcy, the sole owner of the stock of goods, wares, and merchandise with which he is now doing business in the town of Somerville under the name and style of the Jacob Hirsch Company, and he has not returned this property upon any sworn schedule filed by him, showing its location or value. Second. That he has likewise concealed one share of stock, of which he was and is the owner at the time of the filing of his petition in bankruptcy, in the corporation known as the Jacob Hirsch Company, of the value of $50, which he did not return upon his schedules, and which he has not made known to his creditors by any sworn return in the bankruptcy proceedings. Third. That, with the fraudulent intent to conceal his true financial condition, he had failed to keep books of account from which his true financial condition might be ascertained, in that on the 24th of December, 1896, he was engaged in business as a merchant, and made a general assignment for the benefit of his creditors on December 5, 1896, at which time he kept and had on hand a full set of books, consisting of two ledgers, a cotton book, a blotter, and a cash book; that he had filed with the referee his ledgers and his cotton book, but not his cash book and blotter from which the original entries were made, but pretends that he has lost those two books, when, as a matter of fact, he has destroyed or concealed them in contemplation of bankruptcy. Fourth. That he has, with like fraudulent intent and in like contemplation of bankruptcy, destroyed or concealed the cash book and the blotter, where he kept the original records of his receipts of cash and other entries, pretending that he has lost the same, when in fact he has

destroyed them to prevent their being used in evidence against him.

No objection is taken to the form of these specifications as amended, but the bankrupt files a general plea of not guilty, and special pleas explaining his conduct in relation to the books and the share of stock. The court shall not, of its own motion, take any exceptions to the form of the amended specifications, but desires it to be understood that it is not to be thereby implied that they are, in their form, within the requirements of the law for specific pleading. They do not yet set out how the property has been concealed from the creditors or trustee, nor how the books have been concealed or destroyed, unless it may be said that the pleading goes upon the ground that the mere fact that the property was not put upon the schedules is, of itself, conclusive evidence of such concealment as is denounced by the statute, both criminally, and as a ground for withholding the discharge, and that the mere nonproduction of the books on demand is conclusive of their destruction or concealment. It is well enough to notify attorneys that, where objection is made, the court will insist that the specifications in opposition to a discharge shall notify the bankrupt of the conduct on his part which is relied upon for denying the discharge to him, and mere general charges or "fishing" specifications will not suffice. The law affords ample opportunity, by examination of the bankrupt and otherwise, to enable the creditors to disclose the actual facts; and, while it will not be required that the evidence shall be put in the pleadings, it should be required, in all justice, and in accordance with the ordinary rules of penal or criminal as well as of civil procedure of that kind which charges fraud, that the facts must be stated, and not mere epithetical conclusions of fact, as is too common in pleadings of this character. A sufficient pleading by averring the facts would disclose the character of the transaction, without any use at all of the denunciatory words, and yet be completely within the impeachment of the statute. To say that a bankrupt has knowingly and fraudulently concealed a thing is only to accuse by calling names, and is not pleading a fact. On the face of these specifications nothing appears. It is said that the bankrupt is the sole owner of a certain stock of goods described in the specifications. But how has he concealed it? The specification does not inform us. We can see from the proof what the creditors probably mean, but the pleading should require no such aid from the proof. The evidence should support the averments of the plea by proving them, but it cannot supply the necessary averments of a pleading.

Briefly, the proof in this case shows that the bankrupt was in former times a prosperous merchant in the town of Somerville; that, to enlarge his business, he removed to the city of Memphis, where he failed, and subsequently returned to Somerville and went into business, and again failed, and in 1896 made a general assignment. Some six months after this last failure he again appeared in the town of Somerville, doing business under the corporate name of the Jacob Hirsch Company. He was so carrying on business at the time of the filing of his petition in bankruptcy, and is now carrying on business in that manner. He was, and is yet, the owner of one

share of the stock of the Jacob Hirsch Company, and is its secretary and general manager. The evidence conclusively shows that this corporation was organized according to the laws of Tennessee as a trading corporation, and that the stock was subscribed wholly by the immediate family of the bankrupt, except one share to his lawyer. The principal shareholder was his brother-in-law, who frankly testifies that he furnished the money (some $1,800 or $2,000) to establish this corporation, for the purpose of setting his brother up in business, as a family affair; that the stock was distributed among the relatives for the purpose of having the amount of money repaid to the brother-in-law, or to those shareholders to whom he gave it, whenever the business would justify it. He testified that he expected and hoped, and still expects and hopes, that at some time his brother-in-law, through the profits of the business, would be able to repay the money, but that he and the other relatives are still the bona fide holders of the stock. There is not a particle of evidence to show to the contrary of this statement,—such as that it was a mere device, and that the capital stock of the company was really furnished by the bankrupt, directly or indirectly. It is contended by counsel in argument that this was a loan by the brother-in-law to the bankrupt, and that the organization of the corporation was an ingenious device to cover up the real transaction; but this is only an inference, and there is no reason why the brother-in-law who furnished the money might not secure himself in the advances made, in the form of stock in a corporation, as well as in the form of a loan and chattel mortgage on the goods, or in any other way. The only question is whether it is or not a bona fide transaction, and it does not appear to the court, however suspicious it may seem, that upon the evidence it can be fairly said that it was a device or fraudulent transaction, and not a legitimate and honest way to help a broken-down relative. He is paid a salary of $1,500, and he testifies that the business has been prosperous enough to enable him, if desired, to pay as much as 15 per cent. dividend on the amount of the capital stock; but no dividends have been paid, no meetings of stockholders or directors have been held, and the brother-in-law who made the advances frankly testifies that he has had nothing to do with the business, except in the manner above stated. If there were any proof tending to show that the money actually came from the bankrupt himself, or that it was an out and out gift to him by his brother-in-law, there would be some foundation for the alleged fraudulent transaction; but it is not even pretended that there is any proof of that kind in this case.

As to the $50 share of stock owned by the bankrupt in the corporation, it appears that long before his bankruptcy—some nine months, say—he hypothecated that share of stock with his brother-in-law for a loan of $50, which has not been paid, and that the brother-in-law had, in addition to that, loaned the concern, in cash, $100, for which he is still a creditor. Nothing else appears about the ownership of the stock, and the bankrupt testifies that he forgot to put it in the schedules because he supposed that, being pledged for its value, it was not his property.

On the issue as to the destruction or concealment of the books, it appears that soon after the assignment, in 1896, one of the creditors investigated the bankrupt's affairs, and, among other things, the attorney went to Somerville, and asked to see the books, and did examine them, including the blotter and the cash book. When the bankrupt was examined by the referee, he was asked about these books, and said he supposed that the cash book and blotter were at Somerville, and that he would produce them; but he never did. He now explains by his testimony that when he returned, and searched for the books, he could not find them; that, not deeming them of any particular value, and having no convenient place to keep them, he left them lying around in the store, and he supposed that they had been lost or mislaid in some way unknown to him. It does not appear in the proof that after the general assignment of 1896, and the organization of the corporation and resumption of the business at Somerville, any of the creditors undertook to attack that assignment, or to recover the corporate property as fraudulently held by Hirsch for the purpose of hindering, delaying, or defrauding his creditors. It appears by the records of the bankruptcy proceedings that the creditors have appointed no trustee, and, by the referee's report, that they do not desire one appointed, wherefore it is plain that they do not intend to sue for the recovery of the property. It is undoubtedly true that the right of the creditors to specify an alleged fraudulent transaction in opposition to a discharge does not depend upon their having taken any legal proceedings, through a trustee or otherwise, to recover the property itself, and, if it appear by proof that there has been a fraudulent transaction denounced by the statute as a sufficient ground for withholding the discharge, that fact should have no influence whatever; but, when the case is doubtful or inconclusive, the fact that the creditors have not proceeded for the substantial benefit of recovering the property is quite suggestive to the court trying the issue of the discharge that the creditors themselves do not deem the proof of fraud very strong. The machinery of the bankruptcy statute is designed to furnish creditors with every opportunity to recover the fraudulently concealed property of a bankrupt, and, where they do not resort to that method of redress, they do not stand in the same attitude in opposition to the discharge that they otherwise would. In an evenly balanced condition of the proof, it is a fact which should turn the scale in favor of the bankrupt's discharge upon the ground that the creditors themselves had been either not very diligent about the proof, or else regarded it as not very formidable, as, indeed, it appears here not to be. Here is a stock of goods lying for a long time in open sight, under circumstances that are certainly suspicious. Examinations and investigations have been made, with the results we see in the above-stated evidence. The courts do not proceed upon suspicion, but only upon evidence that satisfactorily shows that frauds have been committed. If the court here could have seen that the creditors of this bankrupt were diligent, and earnestly pursuing their remedies at law, through a trustee in bankruptcy, to recover this property, it would undoubtedly at least suspend the further hearing

of the application for a discharge until the creditors had had an opportunity of testing in a court of competent jurisdiction the question of fraud in the most direct and beneficial way; but, in the absence of such proceedings, the court can only look upon the proof as inconclusive, as it undoubtedly appears to be as presented here.

It has been very earnestly and forcibly argued that section 7 of the act of 1898 makes it the duty of the bankrupt to prepare, make out, and file in court a schedule of his property, the location thereof, and testimony of the value in detail, and that a failure to discharge this duty is of itself a sufficient ground for the court to deny the discharge. As already intimated, the statute does not present the grounds of opposition to a discharge in that way. It is specific and definite in prescribing that conduct of a bankrupt which shall defeat him of his discharge, and the courts can incorporate into the statute no other grounds of opposition. Indeed, the general scheme of this act seems very narrowly to limit the grounds for withholding a discharge, and, on the other hand, to declare that it shall have no effect as against creditors who have certain rights and equities against the bankrupt as prescribed in the statute, some of which were, under former acts, prescribed as grounds for denying the discharge. It is unnecessary, however, to go into this feature of the act, for it is too plain for any argument that the mere fact that a bankrupt has not disclosed his property upon the schedules is not of itself a ground for denying the discharge. If the withholding from the schedules be of such a character as makes his oath to the schedules false, upon a proper specification, not found here, the falsity of that oath would be a good ground for withholding his discharge. So, if the withholding be of such a character as to amount, on the facts of the particular case, to knowingly and fraudulently concealing his property from the trustee, it is not only a good ground for withholding the discharge, but a criminal offense, punishable by imprisonment. As stated to counsel in the argument, it is my judgment that, in the absence of all other facts, if it should appear only that the bankrupt had willfully left his property off the schedules, that fact would be conclusive as a matter of evidence both of the false oath and of the concealment of his property from the trustee, but it is only as a matter of evidence that it could have that effect. If, however, it should appear from the proof that the fact of withholding the property from the schedules was satisfactorily explained by circumstances consistent with an honest belief that it did not belong to the bankrupt, it would be no ground either for a criminal prosecution or for withholding the discharge. Here the bankrupt conclusively shows that he is not engaged in the ordinary processes of concealment, because he had been for a long time and was openly engaged in doing business when he filed his petition; and he continues, as before he filed his petition, openly to conduct that business through the method of an organized corporation. It was and is his opinion that the corporate property has no place upon his schedules, and does not belong to his creditors; and, if he and his brother-in-law tell the truth about it,— and there is nothing but suspicion to the contrary,—it does not, in fact or law, belong to his creditors, and therefore has no place upon

his schedules. It would have been wise, however, to have noted his connection with this property on the schedules, by way of honest explanation of a suggestive circumstance, and a suspicious one. There is no denying the force of the fact that this was a family affair, and that he was receiving, through the processes mentioned, the benefits of this business, but it is not at all inconsistent with the most honest intentions and the utmost good faith that a business should be conducted in that way. If a bank, or other capitalist, or other friends than his relatives, had done for him just what his relatives have done, in the absence of any proof to show that it was a simulated transaction and that he was the real owner of the stock or corporate property, there could be no objection taken to the transaction. It would be giving undue weight to the circumstance that those who came to his relief were relatives, to pronounce the whole transaction fraudulent upon that circumstance alone. There is also a strong suspicion in this case that these relatives are unusually indulgent to this bankrupt, and treat the property as entirely his, and not theirs, as owners of the stock in the corporation, because they have not done as shareholders usually do,—looked after their dividends and profits. Still, if the money actually belonged to the brother-in-law who advanced it, and not to the bankrupt, in the absence of any proof showing that he definitely and distinctly abandoned his ownership as a shareholder and donated or gave the property to the bankrupt, it does not become his. As to the share of stock, it is just as apparent that, under the circumstances, the most honest of men might have thought that it was not worth while to put it upon the schedule. It ought to have gone there, undoubtedly, but the neglect to put it there is pardonable, under the circumstances. It does not fall within the condemnatory words of the twenty-ninth section of the statute, "knowingly and fraudulently concealed." Therefore I am of the opinion that no sufficient evidence has been produced to show, either as to the merchandise or as to the share of stock in the corporation, that there has been any concealment such as the statute requires as a ground for denying the discharge.

The case equally fails on the proof as to the destruction of the books. There is no proof whatever to show that he did not keep proper books of account, but, even if there were, it would fall distinctly within the ruling in Re Holman, supra, as to the charge of not keeping books or records at a time anterior to the bankruptcy statute of 1898. Also, it seems to me, on the proof, that a fair and reasonable explanation is given for the nonproduction of the blotter and cash book. What happened to this bankrupt, as shown by experience, is liable to happen to any merchant. The creditors have produced no proof to show that he has concealed or destroyed the books. The charge all hinges upon their nonproduction, and whatever implication may be drawn from the fact that he said on his examination that he had the books, and afterwards did not produce them. He gives a reasonable explanation of this, by saying that at the time of his examination he supposed they were in the store, but when he came to look for them he could not find them, and does not know where they are. Unless his testimony on this point is to be

wholly discredited, there is no evidence against him. It is true that he is discredited as a witness by his interest, yet the statute allowing his testimony would be nugatory, if it is to be discarded absolutely because of his interest. We must take it subject to the discredit along with the other proof, and, so taken, it affords a satisfactory explanation. The creditors have not taken the trouble to make any search for the books, or to produce evidence of any circumstance tending to show that his explanation is not true. We are asked to disbelieve, and refuse his discharge only because the books are not in fact produced, and, as before, upon mere suspicion that he has destroyed them.

But, apart from all this, there is nothing to show that the books were in existence at the time the bankruptcy act was passed, or that they have been lost or mislaid, and thereby concealed, since that time. In an old case, under the act of 1841, the supreme court of the United States considered the meaning of the phrase "in contemplation of bankruptcy" when used in a bankruptcy statute. Attention was called to the conflict of authority on the point as to whether it meant in contemplation of insolvency, or in contemplation of some act of bankruptcy under the statute; and it was held that, under our legislation, it means that the debtor must be acting in view of filing his own petition in bankruptcy, as provided by the statute, or of proceedings which might be taken against him by his creditors for some act declared by the statute to be an act of bankruptcy. Buckingham v. McLean, 13 How. 150. It is to be presumed that congress used the phrase in view of this definition, as established under the act of 1841. The act of 1898 does not use the words "in contemplation of bankruptcy or insolvency,"—a phrase found in the act of 1867,—and the omission of the added word "insolvency" is therefore quite significant. Taking the two phrases together, as found in the act of 1841 and that of 1867, and the interpretations given to each by the adjudicated cases, and we can have no doubt of the meaning of the words as used in the fourteenth section of the act of 1898. In re Black, 2 Ben. 196. Fed. Cas. No. 1,457; In re Craft, 6 Blatchf. 177, Fed. Cas. No. 3,317; Id., 2 Ben. 214, Fed. Cas. No. 3,316; Carr v. Hilton, 1 Curt. 230, Fed. Cas. No. 2,436; Rison v. Knapp, 1 Dill. 187, Fed. Cas. No. 11,861; In re Wolfskill, 5 Sawy. 385, Fed. Cas. No. 17,930; In re Jones, 2 Low. 451, Fed. Cas. No. 7,446. In the last-cited case the court seems to express the opinion that under the act of 1867 a fraud committed before the act was passed could not be set up in opposition to a discharge. And in Re Waite, 1 Low. 207, Fed. Cas. No. 17,044, the same learned judge held that the fact of one being in contemplation of bankruptcy might be proven by circumstances.

It is in proof here that after the bankrupt's failure, in 1896, and some time in the latter part of 1897, while the bankruptcy legislation was pending in congress, he went to one of his creditors, named Bernhold, for the purpose of negotiating a settlement at 20 cents on the dollar. He urged Bernhold to accept it, upon the ground that congress was about to pass a bankruptcy law, and that, if he did not, he would surely go into bankruptcy. From this circumstance it is argued by counsel for the creditors that it is conclusively proved that

his concealment of the books was "in contemplation of bankruptcy." But it does not appear by any proof that that which was done for the purpose of concealing the books was done after the bankruptcy act of 1898 was passed, and, under the foregoing decisions, unless that fact appear, it could not be held that he was acting "in contemplation of bankruptcy." It is not sufficient that he should be concealing the books in contemplation of some bankruptcy bill then pending in congress, that might or might not be passed. Hence, if we might regard this proof as showing that the bankrupt has in fact concealed the books, it would not appear that it was done in contemplation of bankruptcy, by what he said to the witness Bernhold, because that conversation took place before the act of 1898 was passed,—unless it should further appear that the act of concealment or destruction took place after the bankruptcy statute was passed; and of this there is no proof whatever.

On the whole case, suspicious as the circumstances may be considered, I am of the opinion that the creditors have entirely failed to show by proof that there exists any ground prescribed by the statute for withholding the discharge. Discharge granted.

### Additional Opinion.

HAMMOND, J. Since the foregoing judgment was rendered, the bankrupt has asked to have his certificate of discharge issued immediately, and the creditors ask time to consider whether they shall appeal. It is not worth while now to consider the circumstances under which an appeal would operate as a supersedeas of the order overruling specifications and directing a discharge of the bankrupt, nor whether, if a certificate should be issued, a subsequent appeal would annul the discharge. It is always competent for a court temporarily to suspend the execution of its orders to give the adverse party a reasonable time to consider the next step to be taken by him; and, inasmuch as the twenty-fifth section of the act of 1898 allows only 10 days within which to appeal from a judgment granting or denying a discharge, it is fair to all parties to await the expiration of that time before issuing the certificate. Therefore it will be established as a general rule of the practice of this court that, in any case where specifications have been filed in opposition to the discharge of the bankrupt, the certificate on form No. 59 of the official forms in bankruptcy shall not issue until 10 days after the order granting the discharge has been entered, nor until any extension of the 10 days allowed by the twenty-fifth section of the act of 1898 for an appeal from the order has expired.